# EXHIBIT B

> This Opinion is a
> Precedent of the TTAB

Oral Hearing: June 26, 2018                    Mailed: December 2, 2019

## UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Trademark Trial and Appeal Board

_____

*Milwaukee Electric Tool Corp.*
*v.*
*Freud America, Inc.*

_____

Cancellation Nos. 92059634 and 92059637[1]

_____

Laura M. Konkel of Michael Best & Friedrich LLP,
    for Milwaukee Electric Tool Corp.

Jessica A. Ekhoff of Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, LLP,
    for Freud America, Inc.

_____

Before Lykos, Shaw, and Pologeorgis,
    Administrative Trademark Judges.

Opinion by Shaw, Administrative Trademark Judge:

Milwaukee Electric Tool ("Milwaukee") has petitioned to cancel two registrations

owned by Freud America ("Freud") for marks consisting of the color red as applied to

substantially the entire surface of cutting tools. Registration No. 2464769 consists of

the following mark:

---

[1] All TTABVUE references are to the record in Proceeding No. 92059634. The cancellations were consolidated by order of the Board on April 7, 2015. 10 TTABVUE.

Cancellation Nos. 92059634 and 92059637



for goods identified as "cutting tools for power woodworking machines, namely, shaper cutters, saw blades, router bits and forestner [sic] bits," in International Class 7.[2] The drawing is lined for the color red, and the description of the mark reads: "The mark consists of the color red as applied to the entire surface of the goods except the cutting edge and annular hub or shaft."

Registration No. 4028314 consists of the following mark:



for goods identified as "blades for reciprocating power saws," in International Class 7.[3] The color red is claimed as a feature of the mark, and the description of the mark reads: "The mark consists of the color red as applied to substantially the entire surface of the goods. The dotted lines are intended to show the position of the mark on the goods and are not part of the mark as shown."

---

[2] Issued July 3, 2001; Section 15 declaration filed; renewed. A Forstner drill bit is a "spurless wood-drilling bit used especially for drilling blind holes." *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/Forstner/bit. The Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed format or have regular fixed editions. *See In re Cordua Rests. LP*, 110 USPQ2d 1227, 1229 n.4 (TTAB 2014) *aff'd* 823 F.3d 594, 118 USPQ2d 1632 (Fed. Cir. 2016); *In re Red Bull GmbH*, 78 USPQ2d 1375, 1378 (TTAB 2006) (Board may take judicial notice of widely-known reference readily available in specifically denoted editions via the Internet although not available in print); s*ee also Univ. of Notre Dame du Lac v. J. C. Gourmet Food Imps. Co., Inc.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

[3] Issued September 20, 2011; Section 8 affidavit filed and accepted.

Cancellation Nos. 92059634 and 92059637

Both marks registered under Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f), with a showing of acquired distinctiveness. Registration No. 2464769 is more than five years old but may be cancelled if the mark is generic. 15 U.S.C. § 1064.

Milwaukee seeks partial cancellation of Registration No. 2464769 for "saw blades" and Registration No. 4028314 in its entirety on the ground that the color red is generic with respect to saw blades, and in the alternative, with respect to Registration No. 4028314 only, that the color red has not acquired distinctiveness. Milwaukee also seeks cancellation of Registration No. 2464769 in its entirety on the ground it was procured by fraud. Freud, in its Answers, denied the salient allegations of the petitions. Both parties filed briefs and Milwaukee filed a reply brief.

## I. The Record[4]

The record consists of the pleadings and by operation of Trademark Rule 2.122, 37 C.F.R. § 2.122, the files of the involved registrations. The parties stipulated to and otherwise submitted the following evidence:[5]

**DECLARATIONS**

| Evidence | Abbreviation | Public TTABVUE |
|---|---|---|
| Testimony Declaration of Laura Konkel | First Konkel Decl. | 83-86 TTABVUE |
| Second Testimony Declaration of Laura Konkel | Second Konkel Decl. | 88 TTABVUE |
| Third Testimony Declaration of Laura Konkel | Third Konkel Decl. | 94 TTABVUE |
| Fourth Testimony Declaration of Laura Konkel | Fourth Konkel Decl. | 142 TTABVUE |

---

[4] Evidence designated as confidential has only been discussed in general terms.

[5] 156 TTABVUE. For convenience, we have attempted to use the names and abbreviations of the evidence provided by the parties, as shown.

Cancellation Nos. 92059634 and 92059637

| Evidence | Abbreviation | Public TTABVUE |
|---|---|---|
| Testimony Declaration of Scott Griswold | First Griswold Trial Decl. | 103-06 TTABVUE |
| Second Testimony Declaration of Scott Griswold | Second Griswold Trial Decl. | 147 TTABVUE |
| Trial Declaration of Russell Kohl | Kohl Trial Decl. | 110-19 TTABVUE |
| Trial Declaration of James Brewer | Brewer Trial Decl. | 120 TTABVUE |
| Trial Declaration of Jaime Valtierra | Valtierra Trial Decl. | 121 TTABVUE |
| Trial Affidavit of Sebastian Ruggiero | Ruggiero Trial Decl. | 122 TTABVUE |

**NOTICES OF RELIANCE**

| Evidence | Abbreviation | Public TTABVUE |
|---|---|---|
| Petitioner's Notice of Reliance | First MT NOR | 95-97 TTABVUE |
| Petitioner's Second Notice of Reliance | Second MT NOR | 155 and 144-46 TTABVUE |
| Registrant's Notice of Reliance | Freud NOR | 123-130 TTABVUE |

**STIPULATED EVIDENCE**

| Evidence | Abbreviation | Public TTABVUE |
|---|---|---|
| Exhibit A to the Declaration of Scott Griswold in support of Milwaukee Tool's Response in Opposition to Freud's Motion for Summary Judgment | Griswold SJ Decl. | 70 TTABVUE 185 to 71 TTABVUE 147 |
| Exhibits 5-9, 14-21, 23-41, 54 and 60 to the Declaration of Lori Meddings in support of Milwaukee Tool's Response in Opposition to Freud's Motion for Summary Judgment | Meddings SJ Decl. | 69 TTABVUE 26 to 70 TTABVUE 184 |
| Exhibits 1-18 to the Declaration of James Brewer in Support of Freud's Motion for Summary Judgment | Brewer SJ Decl. | 149 TTABVUE 4-167 |
| Updated version of Exhibit 15 to the Declaration of James Brewer in Support of Freud's Motion for Summary Judgment | Brewer SJ Decl. Updated Ex. 15 | 130 TTABVUE 27-28 |
| Updated version of Exhibit 16 to the Declaration of James Brewer in Support of Freud's Motion for Summary Judgment | Brewer SJ Decl. Updated Ex. 16 | 120 TTABVUE 17-18 |

Cancellation Nos. 92059634 and 92059637

| Evidence | Abbreviation | Public TTABVUE |
|---|---|---|
| Exhibits 1-4 and 10 to the Declaration of Thad Chaloemtiarana in Support of Freud's Motion for Summary Judgment | Chaloemtiarana SJ Decl. | 150 TTABVUE 4-115 |
| All exhibits to the Declaration of Jaime Valtierra in Support of Freud's Motion for Summary Judgment | First Valtierra SJ Decl. | 151 TTABVUE 4-1711 |
| Exhibit 1 to the Supplemental Declaration of Jaime Valtierra in Support of Freud's Motion for Summary Judgment | Second Valtierra SJ Decl. | 77 TTABVUE 17-27 |
| All exhibits to the Declaration of Russell Kohl in Support of Freud's Motion for Summary Judgment First | Kohl SJ Decl. | 152 TTABVUE 4-17 |
| All exhibits to the Supplemental Declaration of Russell Kohl in Support of Freud's Motion for Summary Judgment | Second Kohl SJ Decl. | 77 TTABVUE 175 to 78 TTABVUE 253 |

## DEPOSITION TRANSCRIPTS

| Evidence | Abbreviation | Public TTABVUE |
|---|---|---|
| Deposition-Cross Examination of Scott Griswold | Griswold Trial Dep. | 136 TTABVUE |

## II. Evidentiary Objections

Freud objects to consideration of much of Milwaukee's testimony and exhibits on the grounds of, among others, relevancy, hearsay, and lack of foundation.[6] Milwaukee objects to consideration of James Brewer's trial testimony declaration on the ground that he lacks credibility.[7] We address the parties' objections as follows.

---

[6] Freud's Br., Appendix 1, pp. 1-36, 163 TTABVUE 59-94.

[7] Milwaukee's Br., p. 55, 158 TTABVUE 56-58.

Cancellation Nos. 92059634 and 92059637

### A. Freud's objection to hole saw evidence

Freud objects to Milwaukee's evidence regarding hole saws as "irrelevant, unfairly prejudicial and misleading." Freud argues that "[h]ole saws are not 'saw blades'—they are drill bits used in connection with power drills and drill presses. Hole saws are inserted into a drill or drill press, and spin in the same manner as a drill bit."[8] We disagree that "hole saws" are not "saw blades." The term "blade" is broadly defined as "the cutting part of an implement"[9] and is not limited to flat blades, as Freud's argument suggests. On the contrary, the evidence of record shows use of the term "hole saw blade" to refer to hole saws. For example, Home Depot sells a "Hole Saw Blade Set," Harbor Freight uses the term "Hole Saw Blade" to describe a hole saw, and two patents claim a design for a "hole saw blade."[10] In addition, Freud makes red hole saws, which are referred to as "hole saw blades" by one retailer, McFeely's, and a YouTube video.[11]

Saw blades come in many shapes and sizes, e.g., for circular saws, jigsaws, reciprocating saws, band saws, etc. Thus, the fact that a hole saw blade may be cylindrical does not remove it from the family of saws. Rather, it is merely one of a variety of saw shapes and designs used with power woodworking tools. Given that hole saws are used with drills or drill presses and perform in much the same way as Freud's Forstner drill bits, we see no reason why they would not be considered closely

---

[8] Freud's Br., Appendix 1, p. 6, 163 TTABVUE 64.

[9] *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/blade.

[10] Second MT NOR, 145 TTABVUE 181-97, 201.

[11] *Id.*, 145 TTABVUE 205-13.

Cancellation Nos. 92059634 and 92059637

related to, if not encompassed by, Freud's "cutting tools for power woodworking machines, namely . . . saw blades." The objection is overruled.

### B. Freud's objections to jigsaw blades, sabre saw[12] blades, and non-wood cutting blades

Freud further objects to Milwaukee's evidence regarding jigsaw blades, sabre saw blades, and non-wood-cutting saw blades on the ground that these blades differ from the saw blades identified in Freud's registrations, making the evidence "irrelevant, unfairly prejudicial and misleading."[13]

The record shows that consumers are faced with an array of power tool saw blades, from which they must choose the one appropriate for their needs. Some blades are general-purpose blades for cutting a variety of materials whereas other blades are more specialized for cutting only wood, metal, or concrete. Nevertheless, as discussed below, most of these saw blades travel in the same channels of trade and are purchased by the same consumers; therefore, the entire universe of saw blades is relevant for determining consumer perception regarding Freud's marks. That is, the range of available saw blade types affects consumer perception, even if a particular saw blade is not an exact match for a particular tool or a consumer's intended use. *See In re Gen. Mills IP Holdings II, LLC*, 124 USPQ2d 1016, 1024 (TTAB 2017) ("[T]he presence in the market of yellow-packaged cereals from various sources even cereals that are not made of oats or are not toroidal in shape would tend to detract

---

[12] Also known as a saber saw: "A portable power jigsaw used to cut straight or curved lines in wood, plastic, or soft metals." *The American Heritage Dictionary of the English Language,* https://ahdictionary.com.

[13] Freud's Br., Appendix 1, pp. 9-15, 163 TTABVUE 67-73.

Cancellation Nos. 92059634 and 92059637

from any public perception of the predominantly yellow background as a source-indicator pointing solely to Applicant."); *Saint-Gobain Corp. v. 3M Co.*, 90 USPQ2d 1425, 1441 (TTAB 2007) ("Use of the same or similar marks on related goods is relevant in determining whether applicant's [color] mark has acquired distinctiveness.").

Regarding Freud's objection to consideration of jigsaw blades in particular, a "jigsaw" is broadly defined as a "machine saw with a fine blade enabling it to cut curved lines in a sheet of wood, metal, or plastic."[14] Jigsaws clearly are "power woodworking machines" as described in Freud's identification of goods in the '769 registration, therefore, jigsaw blades are functionally related to the saw blades identified in Freud's goods and thus are relevant to the genericness analysis. *Id.*

Regarding Freud's objection to metal-cutting saw blades, Freud itself sells red metal-cutting saw blades for use with the same woodworking power tools as its wood-cutting saw blades.[15] We thus find evidence regarding Freud's competitors' non-wood-cutting blades to be relevant to the genericness analysis, and not, as Freud argues, "irrelevant, unfairly prejudicial and misleading."

In sum, we find the objected-to evidence is admissible. The objections are overruled and we have given the evidence whatever probative value it deserves.

---

[14] *Oxford Dictionaries*, https://en.oxforddictionaries.com/definition/jigsaw. The Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed format or regular fixed editions. *Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983); *In re Red Bull GmbH*, 78 USPQ2d 1375, 1377 (TTAB 2006).

[15] Kohl Trial Decl., Ex. 142, 2003 Fall/Winter Woodworker's Supply catalog, p. 27, 119 TTABVUE 21.

Cancellation Nos. 92059634 and 92059637

### C. Freud's and Milwaukee's remaining objections

Many of the remaining objections go to the weight, rather than the admissibility, of the evidence. Given the nature of the objections, coupled with their number, we see no compelling reason to discuss each objection. In assessing the remaining objections, we employ the same standards the Board has noted before:

> [W]e simply accord the evidence whatever probative value it deserves, if any at all. . . . Ultimately, the Board is capable of weighing the relevance and strength or weakness of the objected-to testimony and evidence in this specific case, including any inherent limitations, and this precludes the need to strike the testimony and evidence.

*Hunt Control Sys. Inc. v. Koninklijke Philips Elec. N.V.*, 98 USPQ2d 1558, 1564 (TTAB 2011), *rev'd on other grounds*, Civ. No. 11-3684, 2017 WL 3719468 (D.N.J. Aug. 29, 2017). As necessary and appropriate, we will point out any limitations of the evidence or otherwise note that the evidence cannot be relied upon in the manner sought. Moreover, the Board considers website and Internet printouts and other materials introduced under a notice of reliance without supporting testimony only for what they show on their face rather than the truth of the matters asserted therein. *See Safer, Inc. v. OMS Invs., Inc.*, 94 USPQ2d 1031, 1039 (TTAB 2010). We have considered all of the testimony and evidence introduced into the record. In doing so, we have kept in mind the various objections raised by the parties and we have accorded whatever probative value the subject testimony and evidence merit.

### III. Standing

Standing is a threshold issue that must be proven by the plaintiff in every inter partes case. *See Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111

Cancellation Nos. 92059634 and 92059637

USPQ2d 1058, 1062 (Fed. Cir. 2014); *see also, e.g.*, *Bell's Brewery, Inc. v. Innovation Brewing*, 125 USPQ2d 1340, 1344 (TTAB 2017). Any person who believes it is or will be damaged by a registration of a mark has standing to file a petition to cancel. Trademark Act Section 14, 15 U.S.C. § 1064.

The Court of Appeals for the Federal Circuit has enunciated a liberal threshold for determining standing. "A petitioner is authorized by statute to seek cancellation of a mark where it has both a real interest in the proceedings as well as a reasonable basis for its belief of damage." *Empresa Cubana*, 111 USPQ2d at 1062 (quotations omitted). A "real interest" is a "direct and personal stake" in the outcome of the proceeding. *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1026 (Fed. Cir. 1999).

When challenging a mark as descriptive or generic, a plaintiff may establish standing by showing that it is engaged in the manufacture or sale of goods the same as or related to those covered by the challenged mark. *See Eastman Kodak Co. v. Bell & Howell Document Mgmt. Prods. Co.*, 23 USPQ2d 1878, 1879 (TTAB 1992), *aff'd*, 994 F.2d 1569, 26 USPQ2d 1912 (Fed. Cir. 1993).

Milwaukee is a manufacturer of power tools and related accessories, including saw blades.[16] Milwaukee has shown that since at least 1956 it has used the color red for its power tools and accessories, including saw blades, as well as on packaging and advertising for these goods.[17] We therefore find that Milwaukee has standing to seek

---

[16] First Griswold Trial Decl. ¶¶ 4-6, 103 TTABVUE 3.

[17] *Id.* at Exs. 4-44, 103 TTABVUE 29-271; Exs. 1-3, 107 TTABVUE 23-50.

Cancellation Nos. 92059634 and 92059637

cancellation of Freud's registrations because it competes with Freud in the power saw blade business, uses the color red on its products, and has a reasonable basis for a belief that it would be damaged by the continued registration of Freud's marks. *See Empresa Cubana,* 111 USPQ2d at 1062.

## IV. Freud's Underlying Applications

### A. Application Serial No. 75150972

Freud filed the application underlying the '769 registration on August 6, 1996, based on use in commerce under Section 1(a), 15 U.S.C. § 1051(a), and claiming a date of first use anywhere and in commerce of February 28, 1988. Freud has since admitted that it did not use the color red on all of the goods as of the date of first use alleged in the application, although the mark was in use on all of the goods prior to the filing date of the application. In fact, Freud claims it first used the color red as a mark on shaper cutters on February 28, 1988, on router bits on July 12, 1991, on Forstner bits on January 13, 1992, and on saw blades on July 31, 1996, i.e., only six days before the application was filed.[18]

Registration was refused on the grounds that the applied-for mark was functional and not inherently distinctive, under Trademark Act Sections 1, 2 and 45, 15 U.S.C. §§ 1051, 1052 and 1127. The Examining Attorney further requested, under 37 C.F.R. § 2.61(b), that Freud provide information about the color red, stating:

> The applicant's response must also address the use of color in the relevant industry. The applicant must advise the examining attorney of any other use of color by the applicant. The applicant must also indicate whether

---

[18] Brewer Trial Decl., ¶ 4, 120 TTABVUE 3.

Cancellation Nos. 92059634 and 92059637

> competitors produce the goods in the identified color and in
> colors other than the identified color. The applicant must
> provide color photographs and color advertisements
> showing competitive goods.[19]

Freud overcame the refusals by explaining that the color red was not functional, and by providing a showing of acquired distinctiveness under Section 2(f), 15 U.S.C. § 1052(f), based on: a declaration claiming ten years of use, four years of advertising expenses, and four years of sales figures.[20] In response to the Examining Attorney's information request regarding the use of color by Freud and its competitors, Freud provided advertisements for its red products and for several colored tool and accessory products, including blue shaper cutters, an orange and yellow sander, a white router bit, a yellow De Walt jigsaw, orange router bits, a blue Ryobi drill press, and a red SystiMatic circular saw blade.[21] Freud also claimed ownership of two registrations on the Supplemental Register for the color red used on shaper cutters and router bits.[22] The arguments and amendments were accepted and the application was approved for publication and registered.

## B. Application Serial No. 85236666

Freud filed the application underlying the '314 registration on February 8, 2011, based on use in commerce under Section 1(a), 15 U.S.C. § 1051(a), and claiming a date of first use anywhere and in commerce of August 3, 2009. Registration was

---

[19] Serial No. 75150972, Office Action dated August 22, 1997, p. 34.

[20] Serial No. 75150972, Response to Office Action dated February 27, 1998, pp. 8-22.

[21] *Id.* at 23-31.

[22] *Id.*; Reg. Nos. 1973556 and 1973557.

Cancellation Nos. 92059634 and 92059637

refused on the ground that the applied-for mark was not inherently distinctive under Trademark Act Sections 1, 2 and 45.[23] The Examining Attorney recommended registration on the Supplemental Register and requested information under 37 C.F.R. § 2.61(b) requiring, among other things, "[a]n explanation as to the use of the identified color(s) in applicant's industry and any other similar use of color in applicant's industry" and "[a]n explanation as to whether competitors produce the goods in the identified color(s) and in color(s) other than the identified color(s)."[24]

Responding to the refusal to register, Freud claimed the applied-for mark had acquired distinctiveness based solely on ownership of its other color marks, Registration Nos. 1973556, 1973557, and 2464769.[25] We note that reliance on Registration Nos. 1973556 and 1973557 was improper inasmuch as these registrations are on the Supplemental Register and cannot support a claim of acquired distinctiveness. Trademark Rule 2.41(a)(1) requires registrations supporting a claim of acquired distinctiveness to be on the Principal Register:

> In appropriate cases, ownership of one or more active prior registrations on the Principal Register or under the Trademark Act of 1905 of the same mark may be accepted as prima facie evidence of distinctiveness if the goods or services are sufficiently similar to the goods or services in the application; however, further evidence may be required.

37 C.F.R. § 2.41(a)(1). The '769 registration, however, is on the Principal Register and was a proper basis to support a Section 2(f) claim.

---

[23] Serial No. 85236666, Office Action dated April 11, 2011, p. 1.

[24] *Id.*

[25] Serial No. 85236666, Response to Office Action dated May 19, 2011, p. 1.

Cancellation Nos. 92059634 and 92059637

Responding to the information request regarding the use of color in the industry, Freud simply stated: "To the Applicant's knowledge, information and belief, it is the only member of the woodworking industry that produces saw blades, router bits, and like woodworking tools bearing the color red."[26]

The claim of acquired distinctiveness and the above explanation were accepted and the application was approved for publication and registered. No evidence regarding third-party use of color for saw blades was made of record by the Examining Attorney or Freud.

## V. Genericness

### A. Applicable law for determining genericness of a color mark

Milwaukee seeks cancellation of Freud's registrations in part or in whole on the ground that the color red is generic when used on the identified goods. "[A] registered mark may be canceled at any time on the grounds that it has become generic." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 224 USPQ 327, 329 (1985) (citing 15 U.S.C. §§ 1052 and 1064). It is Milwaukee's burden to establish that Freud's color marks are generic by a preponderance of the evidence. *Magic Wand Inc. v. RDB Inc.*, 940 F.2d 638, 19 USPQ2d 1551, 1554 (Fed. Cir. 1991).

There is no disagreement that a single color applied to goods can be a trademark. It is settled that "no special legal rule prevents color alone from serving as a trademark." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 34 USPQ2d 1161, 1162 (1995). A single color alone, however, can never be inherently distinctive and an

---

[26] *Id.*

Cancellation Nos. 92059634 and 92059637

applicant must establish that the color has acquired distinctiveness as a mark for the goods. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211-12, 54 USPQ2d 1065, 1068 (2000). The question here, however, is whether the color red is generic for the identified goods and thus unregistrable under Trademark Act Sections 1, 2 and 45 because it cannot function as a mark. *BellSouth Corp. v. DataNational Corp.*, 60 F.3d 1565, 35 USPQ2d 1554, 1557 (Fed. Cir. 1995) ("A generic term cannot be registered as a trademark because such a term cannot function as an indication of source."). If it is generic, acquired distinctiveness cannot save it. *See, e.g.*, *Royal Crown Co. v. Coca-Cola Co.*, 892 F.3d 1358, 127 USPQ2D 1041, 1048 (Fed. Cir. 2018) ("[g]eneric terms cannot be rescued by proof of distinctiveness or secondary meaning no matter how voluminous the proffered evidence may be") (citation omitted).

To determine whether a single color applied to the goods can be generic for the identified goods, we begin with the relevant statutory text. Section 14 of the Trademark Act states that "[t]he primary significance of the registered mark to the relevant public . . . shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used." 15 U.S.C. § 1064(3). The Court of Appeals for the Federal Circuit has held that "generic name" encompasses anything that potentially can but fails to serve to indicate source, including trade dress:

> Our review of the Lanham Act and relevant case law persuades us that the term "generic name" as used in 15 U.S.C. Section 1064(3), must be read expansively to encompass anything that has the potential but fails to serve as an indicator of source, such as names, words, symbols, devices, or trade dress. Any narrower

Cancellation Nos. 92059634 and 92059637

> interpretation of "generic name" would allow incontestable
> trademarks other than names that become generic to
> retain incontestable status despite their inability to serve
> as source designators. This would directly contravene the
> purpose of the Lanham Act.

*Sunrise Jewelry Mfg. Corp. v. Fred S.A.*, 175 F.3d 1322, 50 USPQ2d 1532, 1535 (Fed. Cir. 1999). Thus, as a form of trade dress, a single color applied to goods may be generic for those goods if it "fails to serve as an indicator of source." *See id.*

Moreover, in a cancellation proceeding we look at both the time when the registrant registered its marks as well as at the present day to determine whether the mark must be cancelled. *Cf. Neapco Inc. v. Dana Corp.*, 12 USPQ2d 1746, 1747 (TTAB 1989) ("[I]f it is established *either* that as of the time of registration, the registered mark was merely descriptive and lacked a secondary meaning, *or* that as of the present time, the mark is merely descriptive and lacks a secondary meaning, the cancellation petition would be granted."); *Kasco Corp. v. S. Saw Serv. Inc.*, 27 USPQ2d 1501, 1506 n.7 (TTAB 1993) (stating that petitioner could prevail if record revealed claimed mark lacked acquired distinctiveness either at time of registration "or as of the present time").

As the Board recently held in *In re Odd Sox LLC*, product packaging trade dress, like product design trade dress, may be deemed generic where it is "at a minimum, so common in the industry that it cannot be said to identify a particular source." *In re Odd Sox LLC,* 2019 USPQ2d 370879 (TTAB 2019) (quoting *Stuart Spector Designs, Ltd. v. Fender Musical Instruments Corp.*, 94 USPQ2d 1549, 1555 (TTAB 2009) (generic product design unregistrable)); s*ee also Sunrise Jewelry*, 50 USPQ2d at 1535-36 (noting that trade dress can be considered generic if it "consists of the shape of a

Cancellation Nos. 92059634 and 92059637

product that conforms to a well-established industry custom") (citation omitted); *Abercrombie & Fitch Stores Inc. v. Am. Eagle Outfitters Inc.*, 280 F.3d 619, 61 USPQ2d 1769, 1781 (6th Cir. 2002) ("[N]o designer should have a monopoly on designs regarded by the public as the basic form of a particular item"). We hold that this standard applies equally to trade dress consisting of a single color.

We further believe it is appropriate to apply a two-step inquiry to determine genericness of a single color similar to the inquiry we apply to word marks and other kinds of trade dress, where we first consider the genus of goods or services at issue, and second consider whether the color sought to be registered or retained on the register is understood by the relevant public primarily as a category or type of trade dress for that genus of goods or services. *Odd Sox*, 2019 USPQ2d 370879 at *6; *see also Sunrise Jewelry*, 50 USPQ2d at 1536 (assessing genericness of the "metallic nautical rope design" at issue as to the "genus of clocks, watches, and jewelry made of precious metal" and asking whether consumers would associate the design primarily with the product category "rather than with [registrant's] specific line of products"); *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986) (setting forth two-step inquiry for word marks that considers the genus of goods or services and whether the term at issue is "understood by the relevant public primarily to refer to that genus of goods or services"). Accordingly, we will identify the appropriate genus of goods and then determine whether the color red is so common within the relevant genus that consumers would

Cancellation Nos. 92059634 and 92059637

primarily associate it with the genus rather than as indicating a unique source of goods within the genus. *See Sunrise Jewelry*, 50 USPQ2d at 1536.

### 1. Genus of the goods

Milwaukee seeks to cancel the '769 registration for "saw blades," but not the other identified goods, "cutting tools for power woodworking machines, namely, shaper cutters, . . . router bits or forestner [sic] bits." Milwaukee seeks to cancel the entire '314 registration for "blades for reciprocating power saws." We find the genus of the goods is adequately defined by the identification of goods, or parts thereof, in the registrations. *See Magic Wand*, 19 USPQ2d at 1554; *In re Trek 2000 Int'l Ltd.*, 97 USPQ2d 1106, 1112 (TTAB 2010) ("[T]he genus of goods at issue in this case is adequately defined by applicant's identification of goods. . . .").

It is clear from the record, arguments, and objections that Freud seeks to limit the wording "saw blades" in the '769 registration to mean only circular saw blades for cutting wood. But we must analyze genericness based on the identification of goods as written. *See Magic Wand*, 19 USPQ2d at 1552 ("[A] proper genericness inquiry focuses on the description of the [goods] set forth in the certificate of registration"); *see also Octocom Sys., Inc. v. Houston Comput. Servs. Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application [or registration] regardless of what the record may reveal as to the particular nature of an applicant's goods. . . .").

The '769 registration contains no limitation as to the saw blades except that they are "cutting tools for power woodworking machines." Accordingly, the genus "cutting

Cancellation Nos. 92059634 and 92059637

tools for power woodworking machines, namely . . . saw blades" is the correct genus and must be read to include any type of saw blade used with any power woodworking machines, such as circular saws, reciprocating saws, jigsaws, sabre saws, and drills. To put it in taxonomic terms, the genus "saw blades for power woodworking machines" must be read to include the species of circular saw blades, reciprocating saw blades, jigsaw blades, sabre saw blades, and even hole saw blades. *See Park 'N Fly*, 224 USPQ at 329 ("A generic term is one that refers to the genus of which the particular product is a species."); *see also Real Foods Pty Ltd. v. Frito-Lay N. Am., Inc.,* 128 USPQ2d 1370, 1379 (Fed. Cir. 2018) (it is improper to narrow the genus of goods by focusing on the species). This interpretation of the term "saw blades" is consistent with the record. A number of exhibits show that different types of saw blades are sometimes grouped together for sales purposes. For example, Milwaukee's search of the term "saw blades" on the Harbor Freight website displays reciprocating saw blades, hole saws, jigsaw blades, and circular saw blades.[27] And Freud's red reciprocating saw blades are often advertised and sold alongside its red circular saw blades.[28] In sum, the term "saw blades" cannot be limited to only circular saw blades. *Id.,* 128 USPQ2d at 1380.

In addition, the record shows that many non-wood-cutting saw blades can be used on woodworking machines to cut material such as plastic laminates, fiber cement,

---

[27] Kohl Trial Decl., Ex. 6, 110 TTABVUE 97-100.

[28] *Id.,* Ex. 23, 110 TTABVUE 265.

Cancellation Nos. 92059634 and 92059637

and metal.[29] Indeed, many of Freud's non-wood-cutting circular saw blades are sold alongside its wood-cutting circular saw blades[30] and are compatible with circular saws.[31] Saw blades that cut material besides wood and that can be used with power woodworking machines, such as circular saws, reciprocating saws, jigsaws, sabre saws, and drills, therefore are relevant to our analysis as well. *See Gen. Mills,* 124 USPQ2d at 1024. In the same way, the wording "blades for reciprocating power saws" in the '314 registration must be read to include blades for cutting any material that can be cut by a reciprocating power saw, e.g. wood, plastic laminates, or metal.

For convenience, we will refer to genus of the goods generally as "saw blades" or "reciprocating saw blades."

### 2. The relevant public

The second part of the genericness test is whether the color red for saw blades is so common in the industry that it cannot be said to identify a particular source to consumers. The relevant public for a genericness determination is the purchasing or consuming public for the identified products. *Loglan Inst. Inc. v. Logical Language Grp. Inc.*, 962 F.2d 1038, 22 USPQ2d 1531, 1533 (Fed. Cir. 1992) (citation omitted) (the relevant public encompasses "actual [and] potential purchasers of . . . goods or services" identified in the registration); *Magic Wand*, 19 USPQ2d at 1553 (citing *In re Montrachet S.A.*, 878 F.2d 375, 11 USPQ2d 1393, 1394 (Fed. Cir. 1989)); *In re*

---

[29] *See, e.g.,* First Griswold Trial Decl., Ex. 37, 103 TTABVUE 243; Exs. 60 and 62, 104 TTABVUE 61 and 76; Ex. 71, 105 TTABVUE 2.

[30] Kohl Trial Decl., Exs. 141-43, 148, 119 TTABVUE 4-35, 45-48.

[31] Kohl Trial Decl., Ex. 171, 119 TTABVUE 153 and 165.

Cancellation Nos. 92059634 and 92059637

*Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987); *H. Marvin Ginn*, 228 USPQ at 530; *Dan Robbins & Assocs., Inc. v. Questor Corp.*, 599 F.2d 1009, 202 USPQ 100, 105 (CCPA 1979). Here, the relevant public is consumers seeking saw blades for power woodworking machines or for reciprocating power saws. Since the identifications of goods contain no limitations as to prospective consumers or channels of trade, the relevant public includes all consumers of saw blades, both members of the general public and persons employed in professions that use such tools.

The relevant public's perception is the primary consideration in determining whether a term is generic. *Merrill Lynch*, 4 USPQ2d at 1142 ("It is basic to the inquiry to determine whether members of the relevant public primarily use or understand the term to refer to the genus of goods or services."); *see also Loglan Inst.*, 22 USPQ2d at 1533. Evidence of the public's understanding may be obtained from any competent source, including testimony, surveys, dictionaries, trade journals, newspapers and other publications. *Id.* at 1533; *Dan Robbins & Assocs., Inc.*, 202 USPQ at 105. Competitor use of a designation to refer to the genus of the goods also is evidence of genericness. *BellSouth*, 35 USPQ2d at 1558; *see also Sunrise Jewelry*, 50 USPQ2d at 1535-36 (trade dress that is shown to conform to an established industry standard is generic); *Stuart Spector Designs*, 94 USPQ2d at 1555 (trade dress is generic if "the design is, at a minimum, so common in the industry that it cannot be said to identify a particular source."); *see also* 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, § 12:13 (5th ed. March 2019 update).

Cancellation Nos. 92059634 and 92059637

## B. Whether Freud's color marks are generic for the identified goods

We now turn to the manner in which the relevant consumers encounter and likely perceive the color red applied to saw blades.

### 1. The use of color in the tool industry.

We begin with an overview of the use of color in the power tool and accessory industry. Both parties have submitted extensive evidence establishing that the use of color on products and packaging is ubiquitous. Neither party argues that the color red is functional.[32] Instead, the record shows the extensive use of color by tool and accessory manufacturers to create product uniformity and brand identity. Although manufacturers use a variety of colors on their products, some of the major tool and accessory manufacturers appear to have settled on single colors for substantial portions of their tools and for their advertising. For example, De Walt uses the color yellow; Ridgid uses orange; Bosch uses blue; Makita uses teal; Porter Cable and Skil use black; and Milwaukee, Craftsman, and Freud use red. Some manufacturers use several different colors. These proceedings stem from the fact that Milwaukee and Freud, among others, use the color red. Some examples of manufacturers' use of color on tools appear below.

---

[32] Some colors may serve a functional purpose. For example, colored sandpaper has been held to be functional: "In the field of coated abrasives, color serves a myriad of functions, including color coding, and the need to color code lends support for the basic finding that color, including purple, is functional in the field of coated abrasives having paper or cloth backing." *Saint-Gobain*, 90 USPQ2d at 1447.

Cancellation Nos. 92059634 and 92059637



33



34



35



36



37

---

[33] Kohl Trial Decl., Ex. 220, 119 TTABVUE 329.

[34] First Griswold Trial Decl., Ex. 58, 104 TTABVUE 55.

[35] *Id.,* Ex. 62, 104 TTABVUE 77.

[36] Kohl Trial Decl., Ex. 213, 119 TTABVUE 294.

[37] First Griswold Trial Decl., Ex. 73, 105 TTABVUE 18.

Cancellation Nos. 92059634 and 92059637

 

In addition to the use of color on power tools, color also is used on tool accessories. Some cutting accessories are unpainted and therefore, being steel, are silver in color. Other cutting accessories are painted or coated with low friction coatings, enabling them to be manufactured in any color. As a result, consumers are confronted with a variety of colors used on cutting accessories, including saw blades. The following representative images show the colors blue, orange, yellow, white, green, teal, black, and red, used on different kinds of cutting accessories.

---

[38] *Id.*, Ex. 75, 106 TTABVUE 30.

[39] *Id.,* Ex. 36, 103 TTABVUE 236.

Cancellation Nos. 92059634 and 92059637









CMT Industrial Thin Kerf   [Model: 255.096.12]

The I.T.K. (Industrial Thin Kerf) Fine Finish blade is part of the mid-grade line from this Italian blade company.

**Noise/vibration suppression:** 3 open slots, Fair dampening effect

**Flatness:** Very Good

**Cut quality:** Notable scratch lines and some irregular marks on end grain. The irregular marks seem attributable to vibration.

**Summary:** A decent, true Hi-ATB blade that can be found for a very good price online—perhaps the least expensive blade tested.

---

[40] Kohl Trial Decl., Ex. 148, 119 TTABVUE 245. The Diablo brand is sold by Freud.

[41] *Id.*, Ex. 148, 119 TTABVUE 47.

[42] *Id.*, 119 TTABVUE 48.

[43] *Id.*, Ex. 193, 119 TTABVUE 249.

Cancellation Nos. 92059634 and 92059637



44



45



46

---

[44] First Valtierra SJ Decl., Ex. 9, 151 TTABVUE 927.

[45] *Id.*, Ex. 9, 151 TTABVUE 937.

[46] *Id.*, Ex. 1, 151 TTABVUE 45.

Cancellation Nos. 92059634 and 92059637



47



48



49

---

47 *Id.*, Ex. 2, 151 TTABVUE 319.

48 First Konkel Decl., Ex. 241, 85 TTABVUE 271.

49 *Id.*, Ex. 168, 85 TTABVUE 24.

Cancellation Nos. 92059634 and 92059637

 

The above examples show that consumers are presented with a rainbow of colors used on both power tools and power tool accessories including saw blades. From this variety of colors, Freud claims that it owns the color red as applied to its goods.

### 2. Freud's use of the color red

Freud states that it first used the color red on router bits in 1988.[52] In order to create a unified red-colored brand identity, Freud expanded the use of the color red to shaper cutters, Forstner bits, circular saw blades, and reciprocating saw blades.[53] Freud sells its red saw blades under both the FREUD and DIABLO brands.[54] The

---

[50] Serial No. 75150972, Response to Office Action dated February 27, 1998, p. 23.

[51] *Id.* at 27.

[52] Brewer Dep., p. 22, 100 TTABVUE 26.

[53] *Id.* at 40, 100 TTABVUE 44.

[54] As shown below, some DIABLO brand blades also display the FREUD mark, but others do not. The extent to which consumers are aware that DIABLO and FREUD are related brands is not clear from the record. Consumer unawareness of the relationship between DIABLO and FREUD would tend to diminish consumer recognition of the color red as indicating a single source for the goods. *Cf. British Seagull Ltd. v. Brunswick Corp.*, 28 USPQ2d 1197 (TTAB 1993), *aff'd*, 35 F.3d 1527, 32 USPQ2d 1120 (Fed. Cir. 1994) (applicant itself was

Cancellation Nos. 92059634 and 92059637

color red covers both sides of the saw blades. Evidence and specimens from the applications underlying Freud's '769 and '314 registrations showing its use of the color red on its goods appear below.





---

responsible for some of the third party use of the color black for marine engines, in that it manufactured black engines for sale by a retail merchant under the merchant's own trademark, and a subsidiary of applicant has sold black engines under the subsidiary's own mark). In light of the findings discussed below, we need not address consumer perception regarding the DIABLO and FREUD relationship.

[55] Serial No. 75150972, Response to Office Action dated February 27, 1998, p. 22.

[56] Serial No. 85236666, Response to Office Action dated May 19, 2011, p. 3.

Cancellation Nos. 92059634 and 92059637

A 2014 retail store display shows extensive use of the color red in presenting Freud
and Diablo accessories.



Not all of Freud's saw blades are colored red. Freud sells unpainted circular saw
blades, and as late as 2003, Freud sold black circular saw blades. Additionally, some
of Freud's reciprocating saws blades are colored both red and white. Examples are
shown below.[58]

---

[57] Kohl Trial Decl., Ex. 161, 119 TTABVUE 84.

[58] *Id.*, Ex. 161, 119 TTABVUE 84; Ex. 141, 119 TTABVUE 6 and 9; Ex. 312, 119 TTABVUE
341.

Cancellation Nos. 92059634 and 92059637





FREUD PRO 10"
SAWBLADES
• Black Teflon coating reduces
  friction between the blade and
  the work piece for faster and
  smoother cuts.
• Thinner kerf helps conserve
  horsepower for better cutting ac-
  tion.
• Laser cut blade bodies feature
  anti-vibration slots for quieter
  running and reduced tooth wear.
• 5/8" arbor hole.
• ATB tooth grind for very clean
  cuts.

|  |  | Hook | Kerf | Plate Thickness |  |
|---|---|---|---|---|---|
| 118-238 | 10"x24T Pro rip blade | 15° | .098 | .071 | $29.99 |
| 118-241 | 10"x 50T Pro combination blade | 15° | .098 | .071 | $39.99 |
| 118-244 | 10"x60T Pro slide miter blade | 7° | .087 | .063 | $44.49 |
| 118-247 | 10"x80T Pro ultra finish blade | 15° | .098 | .071 | $54.49 |
| 960-574 | Set of three 118-238, 118241, 118247 |  |  |  | $112.97 |



### 3. Milwaukee's use of the color red on tools and accessories

Milwaukee's testimony establishes that for more than 60 years it has used the color red as part of its branding strategy. Extensive catalog and sales evidence establishes Milwaukee's long use of the color red on a variety of tools, advertising, packaging, and accessories, including a variety of power saw blades. For example, a 1967 advertisement and the cover of a 2000 tool catalog show the use of red on Milwaukee power tools:

Cancellation Nos. 92059634 and 92059637

 

Similarly, a 2002 tool and accessories catalog shows use of red as both a background color and on Milwaukee's tools. And a 2008 merchandising display catalog shows extensive use of the color red on store displays presenting Milwaukee's accessories:

---

Cancellation Nos. 92059634 and 92059637

 61

 62

[61] *Id.*, Ex. 38, 103 TTABVUE 252.

[62] *Id.*, Ex. 43, 104 TTABVUE 17.

Cancellation Nos. 92059634 and 92059637

A 2017 Home Depot display of Milwaukee's products shows the use of red on Milwaukee's tools and in advertising and packaging.



[63]

---

[63] Fourth Konkel Testimony Decl., Ex. 387, 142 TTABVUE 6.

Cancellation Nos. 92059634 and 92059637

Milwaukee has run sales promotions emphasizing the color red under names such as the "Red Zone" and "Red Flag Challenge."[64] The color red thus has been a significant part of Milwaukee's branding since at least the 1950's. Milwaukee extended its use of the color red to accessories, including reciprocating saw blades, jigsaw blades and hole saws, starting as early as 1956 with the sale of red reciprocating saw blades, which it sold until approximately 2004.[65]

Milwaukee's confidential sales figures provided for the period from 1990 to 2004 show total sales of these saws in the tens of millions of dollars on well over a million units sold.[66] Representative examples of advertising for Milwaukee's red reciprocating saw blades from 1956 and 1999 are shown below:

---

[64] First Griswold Trial Decl., ¶ 7; Exs. 1-3, 107 TTABVUE 24-49.

[65] *Id.*, pp. 7-10; 107 TTABVUE 9-12. After 2004, Milwaukee changed the color scheme of its reciprocating saw blades to red lettering on a white background in predominately red packaging. Milwaukee's sales figures for its red saw blades have been designated as confidential, therefore we discuss them only in general terms.

[66] First Griswold Trial Decl., pp. 7-10; 107 TTABVUE 9-12.

Cancellation Nos. 92059634 and 92059637




67
68

Milwaukee has sold red jigsaw blades since at least 1960 and continues to do so.[69]

Milwaukee's confidential sales figures provided for the period from 1990 to 2016 show

total sales of these saw blades in the millions of dollars and well over a million units

---

[67] Milwaukee 1956 reciprocating saw advertisement with red blade, First Griswold Trial Decl., Ex. 4, 103 TTABVUE 32.

[68] Milwaukee 1999 Sawzall® blade catalog page with red blades, *id.,* Ex. 35, 103 TTABVUE 231.

[69] Griswold Test., p. 10, 107 TTABVUE 12.

Cancellation Nos. 92059634 and 92059637

sold.[70] Below are excerpts from 1991 Milwaukee catalogs advertising red jigsaw blades, as well as blades in other colors such as yellow, white and black:



[71]

---

[70] *Id.* at 10-12, 107 TTABVUE 12-14.

[71] Milwaukee 1991 catalog, First Griswold Trial Decl., Ex. 27, 103 TTABVUE 169.

Cancellation Nos. 92059634 and 92059637

## Milwaukee HEAVY-DUTY U-SHANK JIG SAW BLADES

**U-SHANK BLADES FIT PREVIOUS JIG SAW MODEL 6256-6 AND OTHER POPULAR BRANDS**

| CATALOG NUMBER | QUANTITY PER PKG. | BLADE MATERIAL* | TEETH PER INCH | TOOTH TYPE | LENGTH (INCHES) | WIDTH (INCHES) | RECOMMENDED USE |
|---|---|---|---|---|---|---|---|
| **GENERAL PURPOSE** | | | | | | | |
| 48-42-2300 | 5 | Bi-Metal | 6 | Milled & Set | 4 | 9/32 | Fast cutting, nail embedded wood |
| 48-42-2310 | 5 | Bi-Metal | 10 | Milled & Set | 4 | 9/32 | Fast cutting, nail embedded wood |
| 48-42-2390 | 5 | Bi-Metal | 12 | Milled, Wavy Set | 2-3/4 | 3/16 | Scroll cutting in wood & metal |
| 48-42-0200 | 5 | High Carbon Steel | 6 | Milled & Set | 4 | 9/32 | Very fast rough cutting, wood |
| 48-42-0220 | 5 | High Carbon Steel | 8 | Milled & Set | 4 | 9/32 | Fast straight cutting, wood |
| **WOOD CUTTING** | | | | | | | |
| 48-42-2302 | 5 | Bi-Metal | 6 | Taper Ground | 4 | 9/32 | Very fast clean cutting |
| 48-42-2311 | 5 | Bi-Metal | 10 | Taper Ground | 4 | 9/32 | Fast clean cutting |
| 48-42-2385 | 5 | Bi-Metal | 20 | Taper Ground | 2-3/4 | 3/16 | Scroll cutting in wood & laminates |
| 48-42-0421 | 5 | High Carbon Steel | 6 | Ground & Set | 4 | 9/32 | Very fast rough cutting |
| 48-42-0600 | 5 | High Carbon Steel | 6 | Taper Ground | 4 | 9/32 | Very fast clean cutting |
| 48-42-0240 | 5 | High Carbon Steel | 8 | Taper Ground | 3-1/8 | 7/32 | Clean cutting |
| 48-42-0640 | 5 | High Carbon Steel | 10 | Taper Ground | 4 | 9/32 | Straight clean cutting |
| 48-42-0640 | 5 | High Carbon Steel | 10 | Taper Ground | 4 | 9/32 | Reverse tooth, no top splinters |
| 48-42-0650 | 5 | High Carbon Steel | 12 | Milled, Wavy Set | 2-3/4 | 5/32 | Clean scroll cutting |
| **METAL CUTTING** | | | | | | | |
| 48-42-0850 | 5 | Bi-Metal | 8 | Milled & Set | 4 | 9/32 | Aluminum, non-ferrous metals |
| 48-42-2190 | 5 | Bi-Metal | 14 | Milled, Wavy Set | 3-5/8 | 9/32 | Thick metal over 1/4 inch thick |
| 48-42-2192 | 5 | Bi-Metal | 14 | Milled, Raker Set | 5 | 9/32 | Thick metal, tubing, etc. |
| 48-42-2120 | 5 | Bi-Metal | 18 | Milled, Wavy Set | 2-3/4 | 9/32 | Metal over 1/8 inch thick |
| 48-42-2166 | 5 | Bi-Metal | 24 | Milled, Wavy Set | 2-3/4 | 9/32 | Metal under 1/8 inch thick |
| 48-42-2186 | 5 | Bi-Metal | 24 | Milled, Wavy Set | 5 | 9/32 | Thin metal under 1/8 inch thick |
| 48-42-0101 | 5 | High Speed Steel | 14 | Milled, Raker Set | 2-3/4 | 9/32 | Metal over 1/4 inch thick |
| 48-42-0120 | 5 | High Speed Steel | 18 | Milled, Wavy Set | 2-3/4 | 9/32 | Metal over 1/8 inch thick |
| 48-42-0140 | 5 | High Speed Steel | 24 | Milled, Wavy Set | 2-3/4 | 9/32 | Metal under 1/8 inch thick |
| **SPECIAL APPLICATION** | | | | | | | |
| 48-42-0700 | 5 | High Carbon Steel | Knife | — | 3-5/8 | 9/32 | Rubber & foam materials |
| 48-42-0801 | 5 | Carbide-Tipped | Grit | — | 2-3/4 | 5/16 | Ceramics, tile |

[72]

Milwaukee began selling red hole saws in 1970 and continues to do so.[73]
Confidential sales data provided for the period from 1990 to 2016 show total sales of

---

[72] Milwaukee 2005-06 catalog, Griswold Test., Ex. 41, 104 TTABVUE 7.

[73] First Griswold Trial Decl, p. 12, 107 TTABVUE 14.

Cancellation Nos. 92059634 and 92059637

these saws in the tens of millions of dollars and well over four million units sold.[74]

Below are some examples of Milwaukee's advertising for its red hole saws:




Milwaukee's evidence establishes that it used the color red on reciprocating saw blades, jigsaw blades and hole saws for decades before Freud's claimed date of first use of the color red on saw blades. Milwaukee continues to use the color red on jigsaw blades and hole saws. The sales figures further establish that this use is both long-running and significant in volume. This extensive evidence of use of the color red on saw blades by a direct competitor of Freud is evidence that purchasers of saw blades

---

[74] Griswold Test., pp. 15-16, 107 TTABVUE 17-18.

[75] Milwaukee 1970 hole saw advertisement, Griswold Test., Ex. 12, 103 TTABVUE 61.

[76] Milwaukee 1991 catalog, *id.*, Ex. 27, 103 TTABVUE 168.

Cancellation Nos. 92059634 and 92059637

would be unlikely to differentiate between competing sources simply by viewing the color red on the saw blades. *See BellSouth*, 35 USPQ2d at 1558.

### 4. Other red circular saw blades

Milwaukee introduced examples of other circular saw blades, colored red, in whole or in significant part. The saw blades are for cutting wood, laminate, plastic, metal or concrete and stone. In some cases Milwaukee purchased the blades thereby establishing their availability to U.S. consumers. In other cases only the advertising, catalog excerpt, web page, or media reference was made of record. The following examples are representative.

### a. Hilti circular saw blades



Hilti is a manufacturer and seller of tools and accessories, including saw blades. It advertised red saw blades on its website and sold them at Hilti-branded retail stores and via third-party online sites.[77] In 2016, Milwaukee purchased the predominately red colored blade shown at right from a Hilti store.[78] Some of Hilti's blades were manufactured by Freud's sister company, Scintilla AG.[79] Both Freud and Scintilla are now owned by Bosch, which bought Freud in 2009.[80]

---

[77] First MT NOR ¶ 6(a), 95 TTABVUE 6, Ex. 11, 97 TTABVUE 22.

[78] First Konkel Decl., ¶¶ 16-17, 83 TTABVUE 7, Ex. 10-13, 83 TTABVUE 101.

[79] Second MT NOR, ¶¶ 1-2, 155 TTABVUE 3, Ex. 22, 155 TTABVUE 111-18, 129-35.

[80] *Id.,* ¶ 4, 155 TTABVUE 3, Ex. 55, 146 TTABVUE 35.

Cancellation Nos. 92059634 and 92059637

In August 2017, well after these proceedings began, Freud signed an agreement with Hilti for it to phase out the sale of red circular saw and reciprocating saw blades. However, Hilti continues to advertise at least one red circular saw blade for cutting concrete and masonry, shown at right.[81]



### b.   SystiMatic circular saw blades

During the pendency of Freud's application underlying the '769 registration, another saw blade manufacturer, SystiMatic, advertised red circular saw blades. Freud submitted the advertisement at right as part of its response to the Examining Attorney's information request regarding the use of color by Freud's competitors.[82] Freud's Brewer testimony indicates that SystiMatic is no longer in business.[83] Nevertheless, this SystiMatic advertisement shows that as far back as 1996, Freud's use of the color red on circular saw blades was not exclusive because at least one other company was advertising red circular saw blades.



---

[81] *Id.,* ¶¶ 1, 3, 155 TTABVUE 3, Ex. 22, 155 TTABVUE 112, and Ex. 23, 155 TTABVUE 136.

[82] Serial No. 75150972, response office action dated February 27, 1998, p. 29.

[83] Brewer Trial Decl., ¶ 12, 120 TTABVUE 4.

Cancellation Nos. 92059634 and 92059637

#### c.  Benchmark's circular saw blade

Milwaukee introduced an excerpt from a YouTube video showing a Benchmark brand reddish-colored carbide tipped circular saw blade.[84]



#### d.  Bosch

Milwaukee introduced a web page advertising the Bosch "Segmented Rim Diamond Blade" for "cutting pavers, soft brick, asphalt and concrete/block" for use in angle grinders.[85] As noted above, Bosch is Freud's parent company.



#### e.  Specialty Tools & Fasteners Distributors Association Directory

Milwaukee introduced a trade publication, the 2017 Member Directory of the Specialty Tools & Fasteners Distributors Association, featuring advertisements for several red abrasive circular saw blades, including the Pearl Abrasive metal cutting blades, Diamond Vantage abrasive blade, and Motoyuki metal cutting blade, shown below, respectively.[86]

---

[84] Second MT NOR, ¶ 10, 155 TTABVUE 7, Ex. 36, 145 TTABVUE 162.

[85] *Id.,* ¶ 5, 155 TTABVUE 4, Ex. 25, 155 TTABVUE 148.

[86] *Id.,* ¶ 9, 155 TTABVUE 5, Ex. 34, 145 TTABVUE 72-73 and 82.

Cancellation Nos. 92059634 and 92059637

  

### f. Changheng circular saw blades

In 2016, Milwaukee purchased the Changheng red circular woodworking saw blade shown at right from Amazon.com.[87] Brewer testified that in 2017, Freud sent a cease and desist letter to Uxcell, the distributor of the Changheng red circular saw blade.[88] Uxcell purportedly acceded to Freud's request to discontinue sales of the blade.



### g. JiaBo circular saw blade

In 2016, Milwaukee purchased the JiaBo red circular wood cutting saw blade shown at right from the Walmart.com website.[89] Brewer testified that in 2017, Freud sent a cease and desist letter to Tasharina Corporation, the distributor of



---

[87] First Konkel Decl., ¶¶ 21-23, 83 TTABVUE 8, Ex. 20-24, 83 TTABVUE 147.

[88] Brewer Trial Decl., ¶ 18(b), 120 TTABVUE 11, Ex. 243, 120 TTABVUE 144.

[89] First Konkel Decl., ¶¶ 24-26, 83 TTABVUE 9, Ex. 25-30, 83 TTABVUE 150.

Cancellation Nos. 92059634 and 92059637

the JiaBo red circular saw blade.[90] Tasharina purportedly acceded to Freud's request to discontinue sales of the blade.

### h. Lenox MetalMax circular saw blade

In 2017, the web page of Lennox Tools advertised the Lenox MetalMax diamond circular saw blade for cutting metal, shown at right. The blade was advertised as being suitable for circular saws, in diameters from six to eight inches.[91]



### i. Ox circular saw blade

An excerpt from the November/December 2016 issue of Professional Deck Builder provides information about the Ox brand diamond blade for cutting stone and metal, and available in diameters from four inches to fourteen inches.[92]



### j. Quiwang circular saw blade

In 2016, Amazon.com advertised a red Quiwang brand circular saw blade for cutting wood. [93]



---

[90] Brewer Trial Decl., ¶ 18(b), 120 TTABVUE 11, Ex. 243, 120 TTABVUE 144.

[91] Second MT NOR, ¶ 5, 155 TTABVUE 4, Ex. 24, 155 TTABVUE 143.

[92] *Id.,* ¶ 14, 155 TTABVUE 11, Ex. 53, 146 TTABVUE 23.

[93] First MT NOR, ¶ 6(a), 95 TTABVUE 6, Ex. 11, 97 TTABVUE 112.

Cancellation Nos. 92059634 and 92059637

      k.    Vermont American circular saw dado blades

In 2017, Vermont American advertised a "Dial-A-Groove® Carbide Tipped Adjustable" Dado circular saw blade with a red center on its website vermontamerican.com. The blade is used to cut "dadoes, rabbets, splines and lap joints in wood, composite materials and plastics."[94]



      l.    Xingxiang circular saw blade

In 2016, Walmart.com advertised the red Xingxiang brand circular saw blade for cutting wood. Milwaukee purchased one of the saw blades from the Walmart.com website.[95]



### 5. Third-party red reciprocating saw blades

Milwaukee introduced numerous examples of third-party red reciprocating saw blades. The saw blades are for cutting wood, laminate, plastic, or metal. As with the circular saw blades, in some cases Milwaukee purchased the blades, thereby establishing their availability to U.S. consumers. In other cases only the advertising, catalog excerpt, web page, or media reference was made of record. The following examples are representative.

---

[94] Second MT NOR, ¶ 6, 155 TTABVUE 5, Ex. 26, 155 TTABVUE 153.

[95] First Konkel Decl., ¶¶ 27-29, 83 TTABVUE 11, Ex. 31, 83 TTABVUE 163.

a. Bosch 1988 tool catalog with red blade.

Milwaukee introduced a 1988 Bosch tool catalog with a cover featuring a reciprocating saw with a red saw blade. Although no branding is visible on the red saw blade, Bosch's depiction of the red blade precedes any claimed use by Freud of red on saw blades.



b.    Campbell Hausfeld red reciprocating saw blades

In 2016, Milwaukee purchased a Campbell Hausfeld red reciprocating saw blade set from the Build.com website. The five piece set included three red saw blades of the type shown below, and was advertised for sale on five other retail websites, including Amazon.com and Walmart.com. Freud argues that the blade is orange, not

---

[96] First Griswold Trial Decl., ¶ 35, 103 TTABVUE 19, Ex. 58, 104 TTABVUE 54.

Cancellation Nos. 92059634 and 92059637

red, but the packaging states that the kit contains three red blades and two gray blades.[97]



c.     Century Drill & Tool red reciprocating saw blades

In 2016, Milwaukee purchased a red Century brand reciprocating saw blade from Amazon.com. The wood, metal and PVC-cutting saw blade, shown below, was advertised for sale on several other retail websites, including Walmart.com and Houzz.com.



d.     Craftsman tool catalogs

Milwaukee made of record several Craftsman brand power and hand tool catalogs from 1998 to 2001. These catalogs show Craftsman and Makita brand reciprocating saws featuring red saw blades long before Freud's first claimed use of red on reciprocating saw blades on August 3, 2009.

---

[97] First Konkel Decl., ¶¶ 40-43, 83 TTABVUE 15, Ex. 67, 83 TTABVUE 273-74.

[98] Second Konkel Decl., ¶¶ 5-16, 88 TTABVUE 3, Ex. 329, 88 TTABVUE 48.

Cancellation Nos. 92059634 and 92059637

 

e.   Do-It-Best red reciprocating saw blades

In 2016, Milwaukee purchased several red Do it brand metal-cutting reciprocating saw blades from the Do-It-Best website and from an authorized retailer, Neitzel Auto & Hardware. One of the blades is shown below.



f.   Heleta/Bullet Industries red reciprocating saw blade

In 2016, Milwaukee purchased a red Bullet Industries brand multipurpose reciprocating saw blade, shown below, from the Heleta.com website.



---

[99] First Griswold Trial Decl., ¶ 35, 103 TTABVUE 19, Ex. 85, 106 TTABVUE 20.

[100] *Id.*

[101] First Konkel Decl., ¶¶ 78-89, 83 TTABVUE 32, Ex. 148, 84 TTABVUE 264.

[102] *Id.,* ¶¶ 48-52, 83 TTABVUE 20, Ex. 87, 84 TTABVUE 34.

Cancellation Nos. 92059634 and 92059637

g.   Illinois Industrial Tool red reciprocating saw blades

In 2016, Milwaukee purchased an Illinois Industrial Tool set of ten reciprocating saw blades from Blattsbargains.com. The set of multicolored blades included two red metal-cutting saw blades, shown below.



Brewer testified that in 2017, Freud sent a cease and desist letter to Illinois Industrial Tool, the manufacturer of the reciprocating saw blade set. Illinois Industrial Tool acceded to Freud's request to discontinue sales of the red blade and sold its remaining inventory to Freud.[104]

---

[103] *Id.*, ¶¶ 44-47, 83 TTABVUE 18, Ex. 80, 84 TTABVUE 12.

[104] Brewer Trial Decl., ¶ 18(c), 120 TTABVUE 12, Ex. 244, 120 TTABVUE 158.

Cancellation Nos. 92059634 and 92059637

h.    Ingersoll Rand red reciprocating saw blades

In 2016, Milwaukee purchased Ingersoll Rand red metal-cutting saw blades for pneumatic reciprocating saws at a Tractor Supply Company store and a Toolbarn store. The saw blades also are sold by Grainger, Sears, and Walmart.



105

i.    Irwin red reciprocating saw blades

Milwaukee introduced 1991 and 1994 Irwin tool catalogs with images including red reciprocating saw blades. Irwin's depiction of the red blades precedes any claimed use by Freud of red on saw blades.



106

---

[105] First Konkel Decl., ¶¶ 53-64, 83 TTABVUE 22, Ex. 120, 84 TTABVUE 134.

[106] First Griswold Trial Decl., ¶ 35, 103 TTABVUE 19, Ex. 60, 104 TTABVUE 65.

Cancellation Nos. 92059634 and 92059637

j.   Makita red reciprocating saw blades

Milwaukee introduced three 1999-2001 Makita tool catalogs with images featuring Makita-branded red reciprocating saw blades, shown below. Makita's depiction of the red blades precedes any claimed use by Freud of red on reciprocating saw blades.


107

k.   Master Mechanic red reciprocating saw blades

In 2016, Milwaukee purchased two Master Mechanic brand reciprocating saws from the True Value website and a True Value retail store. The reciprocating saws included a red blade, shown below.


108

l.   Maxbilt red reciprocating saw blades

In 2016, Milwaukee purchased a red wood-pruning Maxbilt reciprocating saw blade set from Amazon.com. The set included thirty red blades for cutting metal and wood, and for pruning trees.

---

107 *Id.,* ¶ 35, 103 TTABVUE 19, Ex. 62, 104 TTABVUE 79.
108 First Konkel Decl., ¶¶ 30-39, 83 TTABVUE 12-14, Ex. 44, 83 TTABVUE 209.

Cancellation Nos. 92059634 and 92059637



109

m.   Mibro red reciprocating saw blades

The Mibro website displays images of red reciprocating saw blades.



110

n.   REMS red reciprocating saw blades

In 2016, Milwaukee purchased red multipurpose REMS brand reciprocating saw blades from the Teal Corporation, a REMS distributor.[111] The REMS website also displays images of red reciprocating saw blades,[112] and videos featuring the blades appear on YouTube:

---

[109] *Id.*, ¶¶ 75-77, 83 TTABVUE 32, Ex. 138, 84 TTABVUE 226.

[110] *Id.*, ¶¶ 90-103, 83 TTABVUE 35-38, Ex. 158, 84 TTABVUE 293.

[111] *Id.*, ¶¶ 65-74, 83 TTABVUE 29-31, Exs. 130-32, 84 TTABVUE 201-06.

[112] *Id.*, Exs. 122-24, 84 TTABVUE 137-48.

Cancellation Nos. 92059634 and 92059637



113

o.   Ridgid red reciprocating saw blades

Milwaukee introduced seven Ridgid tool catalogs, ranging from 1978 to 2004, with numerous images showing red reciprocating saw blades. A representative excerpt from the 1983 Ridgid tool catalog is shown at right.[114] Ridgid's depiction of the red blades precedes any claimed use by Freud of red on saw blades. Ridgid continued to advertise red reciprocating saw blades on its web site as recently as 2017.[115]



---

[113] Second MT NOR, ¶ 10, 155 TTABVUE 7-8, Ex. 36, 145 TTABVUE 157.

[114] First Griswold Trial Decl., ¶ 35, 103 TTABVUE 19, Ex. 74, 105 TTABVUE 24.

[115] Second MT NOR, ¶ 6, 155 TTABVUE 4-5, Ex. 27, 155 TTABVUE 156-60.

Cancellation Nos. 92059634 and 92059637

     p.   Rockwell reciprocating saw with red blade

Milwaukee introduced excerpts from the websites of JCPenny, Walmart, and BJ's Wholesale Club showing advertising for a Rockwell reciprocating saw with a red blade, shown below.



     q.   Sioux Tools red reciprocating saw blades

Milwaukee introduced excerpts from the Sioux Tools website, catalog, and brochures showing advertising for a Sioux Tool pneumatic reciprocating saw with a red blade, as well as red saw blades sold separately, both shown below. Milwaukee purchased one of the saw blades from the website of Motion Industries.[117]

 

---

[116] Third Konkel Decl., ¶¶ 23-24, 94 TTABVUE 10-11, Ex. 379, 94 TTABVUE 118-19.

[117] *Id.*, Exs. 363-66, 94 TTABVUE 73-81.

[118] *Id.*, ¶¶ 10-17, 94 TTABVUE 6-8, Ex. 359, 94 TTABVUE 62.

[119] *Id.*

Cancellation Nos. 92059634 and 92059637

r.   Tool Shop red reciprocating saw blades

In 2017, Milwaukee purchased Tool Shop brand red wood-cutting reciprocating saw blades, shown below, from the Menard's website and from a Menard's retail store.



120

s.   Skil red reciprocating saw blades

Milwaukee introduced four Skil brand tool catalogs, from 1992 to 1998, with numerous images showing red reciprocating saw blades. An example from the 1992 Skil tool catalog is shown below. Skil's depiction of the red blades precedes any claimed use by Freud of red on saw blades.



121

t.   Unitec red reciprocating saw blades

Milwaukee introduced excerpts from a 2004 Unitec tool catalog showing advertising for a Unitec pneumatic reciprocating saw with a red metal cutting blade, as well as the blades sold separately, both shown below.[122] Unitec's 2004 depiction of the red blades precedes any claimed use by Freud of red on reciprocating saw blades.

---

[120] *Id.*, ¶¶ 4-9, 18-22, 94 TTABVUE 4-6, Exs. 352 and 356, 94 TTABVUE 39 and 49.

[121] First Griswold Trial Decl., ¶ 35, 103 TTABVUE 19-20, Ex. 89, 106 TTABVUE 39.

[122] *Id.*, ¶ 35, 103 TTABVUE 19-20, Ex. 93, 106 TTABVUE 62 and 67.

Cancellation Nos. 92059634 and 92059637



### 6.  Third-party red jigsaw and sabre saw blades

Milwaukee introduced examples of third-party red saw blades for jigsaws and sabre saws. The saw blades are for cutting wood, laminate, plastic, or metal. As with the other saw blades, in some cases Milwaukee purchased the blades, thereby establishing their availability to U.S. consumers. In other cases only the advertising, catalog excerpt, web page, or media reference was made of record. The following examples are representative.

### a.  ATE Pro red sabre saw blades

In 2016, Milwaukee purchased an ATE Pro brand sabre saw blade set from Amazon.com. The set included eight different saw blades including a red saw blade, shown below.



[123]

---

[123] First Konkel Decl., ¶¶ 142-47, 83 TTABVUE 50-51, Ex. 240-43, 85 TTABVUE 267-75.

Cancellation Nos. 92059634 and 92059637

   b.   Cal-Hawk red jigsaw blades

In 2016, Milwaukee purchased a Cal-Hawk brand jigsaw blade set from the Sears website. The fourteen piece set included two red saw blades, shown below, and also was advertised for sale on three other retail websites.



124

   c.   Century red jigsaw blades

In 2016, Milwaukee purchased red Century jigsaw blades for cutting metal, shown below from Amazon.com. These blades were advertised on several other websites, including Walmart.com.



125

---

124 *Id.*, ¶¶ 132-135, 83 TTABVUE 47-49, Ex. 226, 85 TTABVUE 220.

125 Second Konkel Decl., ¶¶ 12-16, 88 TTABVUE 5-7, Ex. 339, 88 TTABVUE 91.

Cancellation Nos. 92059634 and 92059637

    d.    Grand Rapids Industrial Products red jigsaw blades

In 2016, Milwaukee purchased from the Sears.com website a Grand Rapids Industrial Products fourteen piece jigsaw blade set which included two red saw blades as shown in advertisements, below left, and as received, below right.



126

    e.    Hawk brand red sabre saw blades

In 2016, Milwaukee purchased a red Hawk brand sabre saw blade set from Amazon.com. The set of multicolored blades included a red metal-cutting saw blade.



127

    f.    Mibro red jigsaw saw blades

In 2016, Milwaukee purchased the red Mibro brand jigsaw blade, shown below, from the Tractor Supply Company website, a Tractor Supply Company retail store, and Amazon.com.



128

---

[126] First Konkel Decl., ¶¶ 118-25, 83 TTABVUE 43-45, Exs. 199 and 207, 85 TTABVUE 139 and 169.

[127] *Id.*, ¶¶ 151-153, 83 TTABVUE 52-53, Ex. 252, 85 TTABVUE 306.

[128] *Id.*, ¶¶ 90-103, 83 TTABVUE 35-39, Ex. 164, 85 TTABVUE 15.

Cancellation Nos. 92059634 and 92059637

g. Porter Cable red jigsaw blades



Milwaukee introduced six Porter Cable tool catalogs, ranging from 1990 to 2004/2005, with numerous images showing red jigsaw and reciprocating saw blades. An excerpt from the 1990 Porter Cable tool catalog is shown at right.[129] Porter Cable's depiction of the red blades precedes any claimed use by Freud of red on saw blades.

In 2016, Milwaukee purchased the red Porter Cable brand jigsaw blade, shown below, from the Sears.com website.



[130]

h. Tool Choice red jigsaw blades



In 2016, Milwaukee purchased a Tool Choice brand jigsaw blade set from Amazon.com.[131] The set included two red jigsaw blades, as shown at right.[132]

---

[129] First Griswold Trial Decl., ¶ 35, 103 TTABVUE 19, Ex. 68, 104 TTABVUE 109.

[130] First Konkel Decl., ¶¶ 104-08, 83 TTABVUE 39-41, Ex. 184, 85 TTABVUE 91.

[131] *Id.*, ¶¶ 126-31, 83 TTABVUE 45-47, Ex. 212, 85 TTABVUE 183.

[132] *Id.*, Ex. 213, 85 TTABVUE 170.

Cancellation Nos. 92059634 and 92059637

       i.    Rockwell red jigsaw blades

In 2016, Milwaukee purchased a red Rockwell brand jigsaw blade from the Woodworker's Supply website.



133

       j.    Skil red jigsaw blades

Milwaukee introduced four Skil tool catalogs, from 1992 to 1998, with numerous images showing red jigsaw blades. An example from the 1992 catalog is shown below. Skil's depiction of the red blades precedes any claimed use by Freud of red on saw blades.



134

       k.    Tuf-E-Nuf red jigsaw blades

In 2017, Milwaukee purchased Tuf-E-Nuf brand red jigsaw blade sets from the Task Tools website and from Amazon.com. The jigsaw blade sets included three red saw blades, one of which is shown below.



135

---

[133] Third Konkel Decl., ¶¶ 25-27, 94 TTABVUE 11-12, Ex. 384, 94 TTABVUE 132.

[134] First Griswold Trial Decl., ¶ 35, 103 TTABVUE 19-20, Ex. 89, 106 TTABVUE 40.

[135] First Konkel Decl., ¶¶ 109-17, 83 TTABVUE 41-43, Ex. 192, 85 TTABVUE 115.

Cancellation Nos. 92059634 and 92059637

l.    White Dog red jigsaw blades

In 2017, Milwaukee purchased a fourteen piece White Dog brand jigsaw blade set from Amazon.com. The jigsaw blade sets included two red saw blades, shown at right. [136]



### 7.  Third-party red hole saws

Milwaukee introduced numerous examples of third-party red hole saws. These hole saws are used in drills to cut wood, laminate, plastic, or metal. As with the other saw blades, in some cases Milwaukee purchased the blades, thereby establishing their availability to U.S. consumers. In other cases only the advertising, catalog excerpt, web page, or media reference was made of record. The following examples are representative.

a.    Do-It-Best hole saws

In 2016, Milwaukee purchased a red Do-It-Best brand hole saw from a Do-It-Best authorized a retailer, Neitzel Auto & Hardware. The hole saw, advertised as suitable for cutting wood, is shown below.

---

[136] *Id.*, ¶¶ 136-41, 83 TTABVUE 49-50, Ex. 234, 85 TTABVUE 238.

Cancellation Nos. 92059634 and 92059637



137

b.   Irwin red hole saws

Milwaukee introduced a 1991 Irwin tool accessory catalog with images including red hole saws, as shown below. Irwin's 1991 depiction of the red hole saws precedes any claimed use by Freud of red on saw blades.



138

---

[137] *Id.*, ¶¶ 180-84, 83 TTABVUE 65-67, Ex. 317, 86 TTABVUE 240.

[138] First Griswold Trial Decl., ¶ 35, 103 TTABVUE 19, Ex. 60, 104 TTABVUE 67.

Cancellation Nos. 92059634 and 92059637

    c.    Malco red hole saws

Malco hole saws are advertised on the Malco website and on the websites of several home improvement stores. Videos featuring Malco hole saws also appear on



YouTube.[139] In 2016, Milwaukee purchased a red Malco brand hole saw from the Toolbarn website. The hole saw, advertised as suitable for cutting wood, is shown at right.[140]

    d.    Mibro red hole saws

Mibro hole saws are advertised on the Mibro website and on the website of the Tractor Supply Company. In 2016, Milwaukee purchased a red Mibro brand hole saw from Tractor Supply Company retail store. The hole saw, advertised as suitable for cutting wood and plastic, is shown at right.[141]



    e.    Morse red hole saws

Milwaukee introduced 1998 and 2012 Morse brand tool accessory catalogs with images including numerous red hole saws. Morse's 1998 depiction of the red hole saws precedes any claimed use by Freud of red on reciprocating saw blades.[142] Morse hole

---

[139] First Konkel Decl., ¶¶ 160-65, 83 TTABVUE 57-60; Second MT NOR ¶ 10, 155 TTABVUE 7, Ex. 36, 145 TTABVUE 165.

[140] First Konkel Decl., Ex. 290, 86 TTABVUE 139.

[141] *Id.*, ¶¶ 173-179, 83 TTABVUE 63-65, Ex. 310, 86 TTABVUE 219.

[142] First Griswold Trial Decl., ¶ 35, 103 TTABVUE 19, Exs. 66-67, 104 TTABVUE 94-107.

Cancellation Nos. 92059634 and 92059637

saws are advertised on the Morse website and on several other hardware and tool websites such as Grainger, Hardware World, and Essential Hardware.[143] Videos featuring Morse hole saws appear on YouTube.[144] In 2016, Milwaukee purchased a Morse hole saw from the Essential Hardware website. The hole saw, below, is advertised as suitable for cutting wood.



[145]

 f. Ridgid red hole saws

Milwaukee introduced seven Ridgid tool catalogs, ranging from 1978 to 2004, with numerous images showing red wood-cutting hole saws. A representative excerpt from the 1978 Ridgid tool catalog is shown below left.[146] Ridgid's depiction of the red hole saw precedes any claimed use by Freud of red on saw blades. Videos featuring Ridgid hole saws appear on YouTube.[147] Ridgid hole saws are advertised on the Ridgid website and on several other hardware and tool websites, such as Wares Direct and PlumbersStock.[148] In 2016, Milwaukee purchased a Ridgid hole saw from the Wares

---

[143] First Konkel Decl., ¶¶ 154-59, 83 TTABVUE 53-57, Exs. 255-70, 86 TTABVUE 1-57.

[144] Second MT NOR, ¶ 10, 155 TTABVUE 7-8, Ex. 36, 145 TTABVUE 163-64.

[145] First Konkel Decl., ¶¶ 154-59, 83 TTABVUE 53-57, Exs. 271-73, 86 TTABVUE 58-66.

[146] First Griswold Trial Decl., ¶ 35, 103 TTABVUE 19-20, Ex. 75, 105 TTABVUE 28.

[147] Second MT NOR, ¶ 10, 155 TTABVUE 7-8, Ex. 36, 145 TTABVUE 166.

[148] First Konkel Decl., ¶¶ 166-72, 83 TTABVUE 60-63, Exs. 293-301, 86 TTABVUE 144-84.

Cancellation Nos. 92059634 and 92059637

Direct website. The hole saw, below right, is advertised as suitable for cutting wood.[149]

 

g.   Vermont American red hole saws

In 2017, Vermont American advertised red hole saws, sold as part of lock installation kits, shown below, on its website vermontamerican.com.



[150]

8.  **Third-party red saw blade registrations**

Milwaukee introduced four trademark registrations for marks comprising images of red saw blades, two of which are relevant:[151]

---

[149] *Id.,* Ex. 304, 86 TTABVUE 198.

[150] Second MT NOR, ¶ 6, 155 TTABVUE 4-5, Ex. 26, 155 TTABVUE 155.

[151] First MT NOR, ¶ 7, 95 TTABVUE 16, Ex. 21, 97 TTABVUE 390.

Cancellation Nos. 92059634 and 92059637

      a.    Registration No. 4231971[152] for the mark



for Power saw blades being parts of machines, in International Class 7; and

      b.    Registration No. 4270264[153] for the mark



for Power saw blades being parts of machines, in International Class 7.

## C. Analysis

Milwaukee's evidence documents its long use of the color red for saw blades and provides more than four dozen examples of prior or current third-party use of red saw blades. This evidence establishes that Milwaukee and others have long used the color red on a variety of saw blades, including circular saw blades, reciprocating saw blades, jigsaw blades, sabre saw blades, and hole saws. In some cases, use of the color red on these saw blades predates Freud's claim of first use of red, either on any saw blades or on reciprocating saw blades. This third-party use has not been limited to a few manufacturers, rather, dozens of manufacturers, large and small, have used and continue to use the color red on a variety of saw blades. As shown above, one manufacturer has even registered a depiction of a red saw blade as part of its

---

[152] Issued October 30, 2012; Section 71 affidavit filed and accepted.
[153] Issued January 8, 2013; Section 71 affidavit filed and accepted.

Cancellation Nos. 92059634 and 92059637

SCARFMASTER and TUBEMASTER trademarks. This evidence overwhelmingly demonstrates that the color red on saw blades is so common in the industry that it cannot identify a single source for saw blades for power woodworking machines or saw blades for reciprocating power saws. What is more, because the evidence establishes that the color red was widely used by others at the time Freud filed the underlying applications for each of its subject registrations and third-party use continues to the present day, the color red was generic for power saw blades when Freud applied for both of its marks and remains so now. *Neapco*, 12 USPQ2d at 1747; *Kasco*, 27 USPQ2d at 1506 n.7.

We recognize that this evidence has some limitations: except for Milwaukee's sales, the evidence does not establish the number of red third-party saw blades sold; it does not establish the length of time these red saw blades have seen sold; and it does not establish the precise degree to which consumers have been exposed to the red saw blades. Nevertheless, the evidence establishes that a considerable number of third parties advertise or sell red saw blades and that red saw blades of various types are widely available to consumers through a variety of sources, such as retail stores, tool catalogs, and manufacturer or retail websites. *See Rocket Trademarks Pty Ltd. v. Phard S.p.A.*, 98 USPQ2d 1066, 1072 (TTAB 2011) (Internet printouts "on their face, show that the public may have been exposed to those internet websites and therefore may be aware of the advertisements contained therein").

Moreover, the lack of sales numbers for third-party saw blades is not fatal to Milwaukee's case. Milwaukee was able to purchase many of the third-party blades,

Cancellation Nos. 92059634 and 92059637

thereby establishing that they are available to U.S. consumers, particularly over the Internet. A finding of genericness does not require assigning numerical values to quantify competitive use, so long as the evidence indicates sufficient consumer exposure to the goods bearing competitive use of the designation (here, a color) at issue. The catalog evidence establishes that many red saw blades were available before Freud began using the color red on its saw blades. Given the decades-long advertising by Milwaukee and third parties, as shown in Milwaukee's testimony and evidence, we may infer that at least a steady stream of sales has occurred over the decades—certainly enough that we can infer significant consumer exposure to the color red on saw blades by others.

We also recognize that Freud's goods are limited to saw blades for power woodworking machines and saw blades for reciprocating power saws, such that the registrations Freud holds are evidence of its exclusive right to use the color red on only these goods. 15 U.S.C. §§ 1057(b) and 1115(a). Freud therefore argues that much of the evidence above should be ignored because jigsaw blades and hole saws are not encompassed by Freud's registrations.[154] We disagree.

As discussed above, the identification of goods in the '769 registration clearly encompasses jigsaw blades because jigsaws are power woodworking machines and jigsaw blades are saw blades. And hole saws are a type of saw blade used with drills which also are power woodworking machines. Further, the record shows that it is

---

[154] Freud's Br., p. 12, 163 TTABVUE 14. We have ignored the evidence regarding hacksaw blades because of its limited probative value.

Cancellation Nos. 92059634 and 92059637

common for a manufacturer of saw blades, such as Freud, Milwaukee, and others, to offer a wide variety of saw blades, including jigsaw blades and hole saws. Hence, all saw blades for use with power tools are relevant to our analysis. *See Gen. Mills*, 124 USPQ2d at 1024.

Freud further argues that Milwaukee's sales of red saw blades are insufficient to establish that the color red is generic for saw blades because Milwaukee stopped selling red reciprocating saw blades around 2006 and its sales of jigsaw blades was "far too small" after 2011.[155] We do not share Freud's narrow view of Milwaukee's history of using the color red on saw blades. Milwaukee has used the color red on various saw blades since at least the 1950's, long before Freud began using the color red. This long use affects public perception regarding the color's ability to distinguish source and must be taken into account.

Although Milwaukee provided sales data only from 1990 to 2016, these sales were significant by any measure. Before Freud's first use of red on any saw blades in 1996, Milwaukee sold more than a million red reciprocating saw blades,[156] hundreds of thousands of red jigsaw blades,[157] and more than a million red hole saws.[158] Milwaukee sold several hundred thousand additional red reciprocating saw blades before changing to white reciprocating blades in 2005. Milwaukee's sales of red jigsaw blades have diminished in recent years, as Freud notes, but sales of the blades

---

[155] Freud's Br., p. 14, 163 TTABVUE 16.

[156] First Griswold Trial Decl. ¶ 22, 103 TTABVUE 10.

[157] *Id*. ¶ 27, 103 TTABVUE 13.

[158] *Id*. ¶ 33, 103 TTABVUE 17.

Cancellation Nos. 92059634 and 92059637

nevertheless continue to the present. And since 1996, Milwaukee's sales of red hole saws have increased significantly, to several million more units sold.

In sum, Milwaukee's sales of its red saw blades, although they have ebbed and flowed, began long before Freud's first use of red on any saw blades in 1996 and remain substantial by any measure to the present day. All told, Milwaukee sold well over five million reciprocating saw blades, jigsaw blades and hole saws between 1990 and 2016. Milwaukee's sales occurred before and during the time that Freud claimed that the color red was an indicator of source. These sales were clearly sufficient to affect consumer perceptions regarding the ability of the color red to indicate source, and therefore, undermine Freud's claim that red is an indicator of source for its blades.

We find that the presence in the market of red saw blades from numerous sources—even saw blades that are not used on woodworking machines or reciprocating saws—is incompatible with a finding that the "primary significance of the registered mark to the relevant public" of the color red is as a source-indicator pointing solely to Freud. *See* 15 U.S.C. § 1064(3). These saw blades, from multiple sources, are offered side-by-side in stores, catalogs, and online, and compete directly for the same customers.[159] These customers, accustomed to seeing numerous red saw blades from different sources, are unlikely to be conditioned to perceive the color red as an indicator of a unique source. Rather, they are more likely to view the color red simply as eye-catching ornamentation customarily used for saw blades generally. *Cf.*

---

[159] *See, e.g.*, 104 TTABVUE 69 and 99, 147 TTABVUE 5.

Cancellation Nos. 92059634 and 92059637

*Wal-Mart v. Samara*, 54 USPQ2d at 1069 (consumers are aware that product features such as color or shape are "intended not to identify the source, but to render the product itself more useful or more appealing").

Freud argues that its efforts to police the use of the color red on saw blades is evidence of its exclusive right to use the color red as a trademark. Freud points to "23 representative examples of successfully enforcing its Red Marks."[160] But the majority of Freud's examples involve Freud's other goods, namely, shaper cutters and router bits. In fact, Freud assertedly has enforced its red marks against only a handful of purported infringers of Freud's red circular saws. Of all the red saw blades identified above, Freud has taken action regarding only three manufacturers: Hilti, Changheng, and JiaBo. Of these, Hilti is manufactured by a sister company likely to acquiesce to Freud's demands. Further, there is no evidence that Freud has enforced its rights to red reciprocating saw blades in particular against any third parties. Nor has Freud taken action against the two trademark registrations shown above, which include depictions of red saw blades.

Especially given that many competitors contacted by Freud denied Freud's asserted right in the color red for cutting tools, we find that competitors likely acquiesced to Freud's assertion of its exclusive right to use the color red on saw blades to avoid litigation.[161] *See In re Wella Corp.*, 565 F.2d 143, 196 USPQ 7 n.2 (CCPA 1977) ("Appellant argues that various letters (of record) from competitors indicating

---

[160] Freud's Br., p. 37, 163 TTABVUE 39.

[161] *See, e.g.*, Brewer Trial Decl., ¶ 17 and related exhibits, 120 TTABVUE 6-11.

Cancellation Nos. 92059634 and 92059637

their discontinuance of use of its mark upon threat of legal action are evidence of its distinctiveness, but we agree with the TTAB that such evidence shows a desire of competitors to avoid litigation rather than distinctiveness of the mark.").[162]

Simply put, we find that Freud's efforts to police the manufacture and sale of red saw blades by others does not overcome the reality that consumers have long been, and continue to be, exposed to use of the color red on saw blades by multiple entities. While it may be that some sub-segment of relevant purchasers comprising more knowledgeable consumers (professionals in the building trades) are familiar with the use of color on saw blades, we nevertheless find, based on the multitude of third-party sources for red saw blades and Freud's failure to effectively police the use of red on saw blades, that this record does not support a finding that consumers with lesser degrees of knowledge would or could identify the source of a particular saw blade based solely on the color red or otherwise believe it to indicate a single unknown source. *Stuart Spector Designs*, 94 USPQ2d at 1576.

Freud argues that its sales figures and marketing efforts nevertheless demonstrate consumer recognition of the color red as a mark for saw blades, notwithstanding use of red by others.[163] Freud's sales figures show substantial success in capturing a share of the saw blade market. Freud also points to extensive

---

[162] We note that a similar concept applies in patent cases. *Cf. In re Affinity Labs of Tex., LLC*, 856 F.3d 883, 901-02, 122 USPQ2d 1497, 1509 (Fed. Cir. 2017) ("[T]he mere fact of licensing alone cannot be considered strong evidence of nonobviousness if it cannot also be shown that the licensees did so out of respect for the patent rather than to avoid the expense of litigation.") (citation omitted).

[163] Freud's Br., p. 7, 163 TTABVUE 9.

Cancellation Nos. 92059634 and 92059637

advertising, promotion, in-store displays, and use of social media as evidence that the color red is an indicator of source. However, the extensive use of the color red by other manufacturers on their saw blades undermines Freud's ability to establish consumer recognition. Indeed, Freud admits that it is only "the *predominant seller* of red circular saw blades and red reciprocating saw blades in the U.S. market."[164] (Emphasis added). As established above, Freud was not the only seller of red saw blades when it began using the mark and Freud is still not the only seller of red saw blades today. The use of red by other saw blade sellers is longstanding and widespread. In light of this use by Milwaukee and third parties, Freud's sales figures and marketing efforts, though extensive, cannot demonstrate consumer recognition of the color red as a mark for saw blades designating Freud exclusively as their source. *Cf. Royal Crown*, 127 USPQ2d at 1048-49 (in a case involving the genericness of a word, the Court held: "To the extent the Board relied on TCCC's sales and advertising figures as part of the genericness inquiry, it erred in doing so. This type of evidence may be probative of acquired distinctiveness to the extent it shows that a non-generic term has gained recognition with consumers primarily as to the source of a product. Sales and advertising figures do not, however, demonstrate that a term is not used by the public to refer to the genus of goods in question, or to a sub-group thereof.")

Freud's position demonstrates the peril of investing in advertising in the hope of seeking a legal return-on-investment in the form of enforceable trade dress rights in

---

[164] Freud's Br., p. 7, 163 TTABVUE 9.

Cancellation Nos. 92059634 and 92059637

commonly-used designs or devices. The Court of Appeals for the Federal Circuit, has

noted the futility of attempting to convert generic indicators to exclusive use:

> While it is always distressing to contemplate a situation in which money has been invested in a promotion in the mistaken belief that trademark rights of value are being created, merchants act at their peril in attempting, by advertising, to convert common descriptive names, which belong to the public, to their own exclusive use. Even though they succeed in the creation of de facto secondary meaning, due to lack of competition or other happenstance, the law respecting registration will not give it any effect.

*In re Pennington Seed Inc.*, 466 F.2d 1053, 80 USPQ2d 1758, 1762 (Fed. Cir. 2006)

(quoting *Weiss Noodle Co. v. Golden Cracknel & Specialty Co.*, 290 F.2d 845, 129

USPQ 411, 414 (CCPA 1961)). As with those seeking rights in common descriptive

names, Freud's attempts to seek exclusive trademark rights in the color red for saw

blades have not borne fruit in light of the widespread use of the color red on saw

blades by Milwaukee and others.

### D. Conclusion

Based upon consideration of all the evidence in the record, including any exhibits

we have not discussed, we find that Milwaukee has proven its claim that the color

red is generic as used on "cutting tools for power woodworking machines, namely,

saw blades" and "blades for reciprocating power saws." We therefore sustain the

petition to cancel on grounds of genericness.

## VI. Acquired distinctiveness and the '314 registration

In light of the finding that the color red is generic as used on saw blades, the issue

of whether the color red has acquired distinctiveness for "blades for reciprocating

power saws" is moot. *See, e.g.*, *In re G. D. Searle & Co.*, 360 F.2d 650, 149 USPQ 619,

Cancellation Nos. 92059634 and 92059637

624 (CCPA 1966) ("Where it appears from the evidence that registrability of the term is precluded [due to genericness], inquiry under sections 2(e) and 2(f) is not necessary.")

In the event, however, that, upon appeal, the color red as applied to saw blades is found to be not generic, for the sake of completeness, we address the alternative issue of acquired distinctiveness of the mark in the '314 registration.

Trademark Act Section 2(f) provides in relevant part:

> [N]othing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Director may accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made.

As stated above, single color marks are never inherently distinctive. *Wal-Mart v. Samara*, 54 USPQ2d at 1068. Additionally, by registering the mark in the '314 Registration under Trademark Act Section 2(f), 15 U.S.C. § 1052(f), Freud conceded that the applied-for mark is not inherently distinctive.[165] *See Royal Crown*, 127 USPQ2d at 1044-45 ("At the outset, because TCCC seeks registration of its ZERO-containing marks under Section 2(f) of the Lanham Act, TCCC has conceded that ZERO is not inherently distinctive in association with the genus of goods at issue— soft drinks, energy drinks, and sports drinks.").

---

[165] Serial No. 85236666, Response to Office Action dated May 19, 2011.

Cancellation Nos. 92059634 and 92059637

The presumption of validity that attaches to a registration issued pursuant to Section 2(f) includes a presumption that the registered mark has acquired distinctiveness. To rebut this presumption, a party seeking to cancel such a registration must produce sufficient evidence for the Board to conclude, in view of the entire record in the cancellation proceeding, that the party has rebutted the mark's presumption of acquired distinctiveness by a preponderance of the evidence. *Cold War Museum Inc. v. Cold War Air Museum Inc.*, 586 F.3d 1352, 92 USPQ2d 1626, 1630 (Fed. Cir. 2009). As more fully explained by the Court of Appeals for the Federal Circuit:

> In a Section 2(f) case, the party seeking cancellation bears the initial burden to "establish a prima facie case of no acquired distinctiveness." To satisfy this initial burden, the party seeking cancellation must "present sufficient evidence or argument on which the board could reasonably conclude" that the party has overcome the record evidence of acquired distinctiveness—which includes everything submitted by the applicant during prosecution. The burden of producing additional evidence or argument in defense of registration only shifts to the registrant if and when the party seeking cancellation establishes a prima facie showing of invalidity. The Board must then decide whether the party seeking cancellation has satisfied its ultimate burden of persuasion, based on all the evidence made of record during prosecution and any additional evidence introduced in the cancellation proceeding.

*Id.* (citations omitted).

Furthermore, Freud's reliance on the '769 registration does not preclude Milwaukee from establishing that the mark is so non-distinctive (*i.e.*, common) that a prior registration for the same mark for similar goods is insufficient to establish acquired distinctiveness. *See Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.*,

Cancellation Nos. 92059634 and 92059637

107 USPQ2d 1750, 1765 (TTAB 2013), *aff'd mem.*, 565 F. App'x 900 (Fed. Cir. 2014). *See also* Trademark Rule 2.41(a)(1), 37 C.F.R. § 2.41(a)(1) (notwithstanding ownership of a registration for the same mark for similar goods, "further evidence may be required"). And in a cancellation proceeding, acquired distinctiveness may be determined at the time of registration or trial. *Neapco*, 12 USPQ2d at 1747; *see also Kasco*, 27 USPQ2d at 1506 n.7. As the Board stated in *Neapco*, "[i]n most cases, the time period of primary concern is the time when the registration issued." 12 USPQ2d at 1747.

The burden of proving that a color mark has acquired distinctiveness is substantial. *See In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 227 USPQ 417, 424 (Fed. Cir. 1985) ("By their nature color marks carry a difficult burden in demonstrating distinctiveness and trademark character."); *see also Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 54 USPQ2d 1065, 1069 (2000) ("In the case of product design, as in the case of color, we think consumer predisposition to equate the feature with the source does not exist."). Freud based its original claim of acquired distinctiveness on ownership of a prior registration for the color red as used on cutting tools and did not submit any actual evidence of acquired distinctiveness such as advertising expenditures, volume of sales under the mark, or consumer surveys. In addition, as noted earlier, during prosecution Freud responded to the Examining Attorney's information request regarding the use of color in the industry by stating that to its knowledge, it was the only member of the woodworking industry that

Cancellation Nos. 92059634 and 92059637

produced saw blades, router bits, and like woodworking tools bearing the color red, which indicates that Freud relied as well on a claim of exclusive use.

In this proceeding, however, Milwaukee introduced approximately twenty examples of third parties using the color red on reciprocating power saw blades going as far back as the 1950's, meaning that Freud's use was not "substantially exclusive" within the meaning of Section 2(f) at the time of registration. *See Sheetz of Del., Inc. v. Doctor's Assocs. Inc.*, 108 USPQ2d 1341, 1370 (TTAB 2012) ("In this case, the widespread use of 'Footlong' demonstrated by this record would itself be sufficient to dispose of applicant's claim of acquired distinctiveness"). Given the difficult burden of establishing acquired distinctiveness of a single color and the extensive evidence regarding the large number of red reciprocating saw blades available to consumers, we find Milwaukee has rebutted the '314 registration's presumption of validity and established that the color red for reciprocating saw blades had not acquired distinctiveness at the time of registration. *See Cold War Museum*, 92 USPQ2d at 1629.

The burden of producing additional evidence or argument in defense of the registration thus shifts to Freud to defend its registration. *Id*. at 1630. In light of the nature of the mark and Milwaukee's evidence of lack of exclusivity, it is our view that Freud's rebuttal evidence must be powerful. *Owens-Corning Fiberglas*, 227 USPQ at 424; *Saint-Gobain*, 90 USPQ2d at 1434 ("[W]here 'the use of colors is common in a field, an applicant has a difficult burden in demonstrating distinctiveness of its

Cancellation Nos. 92059634 and 92059637

claimed color.'") (quoting *In re Howard S. Leight and Assocs. Inc.*, 39 USPQ2d 1058, 1060 (TTAB 1996)).

"To show that a mark has acquired distinctiveness, an applicant must demonstrate that the relevant public understands the primary significance of the mark as identifying the source of a product or service rather than the product or service itself." *In re Steelbuilding.com*, 415 F.3d 1293, 75 USPQ2d 1420, 1422 (Fed. Cir. 2005); *see also Coach Servs. Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1729 (Fed. Cir. 2012). Our ultimate Section 2(f) analysis and determination in this case is based on all of the evidence considered as a whole:

> [T]he considerations to be assessed in determining whether a mark has acquired secondary meaning can be described by the following six factors: (1) association of the [mark] with a particular source by actual purchasers (typically measured by customer surveys); (2) length, degree, and exclusivity of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) intentional copying; and (6) unsolicited media coverage of the product embodying the mark.

*In re Snowizard, Inc.*, 129 USPQ2d 1001, 1105 (TTAB 2018) (quoting *Converse, Inc. v. Int'l Trade Comm'n*, 907 F.3d 1361, 128 USPQ2d 1538, 1546 (Fed. Cir. 2018)); *see also Steelbuilding.com*, 75 USPQ2d at 1424; *Cicena Ltd. v. Columbia Telecomms. Grp.*, 900 F.2d 1546, 14 USPQ2d 1401, 1406 (Fed. Cir. 1990). On this list, no single factor is determinative. *In re Tires, Tires, Tires Inc.*, 94 USPQ2d 1153, 1157 (TTAB 2009). Acquired distinctiveness may be shown by direct or circumstantial evidence. Direct evidence of acquired distinctiveness includes actual testimony, declarations or surveys of consumers as to their state of mind (*e.g.*, factor 1). Circumstantial evidence, on the other hand, is evidence from which consumer association might be inferred,

Cancellation Nos. 92059634 and 92059637

such as years of use, extensive sales and advertising, and any similar evidence showing wide exposure of the mark to consumers (*e.g.,* factors 2 through 6). *In re Ennco Display Sys. Inc.*, 56 USPQ2d 1279, 1283 (TTAB 2000).

Freud did not present a survey purporting to measure consumer association. Rather, Freud seeks to rebut Milwaukee's showing with circumstantial evidence establishing sales success and extensive advertising expenditures. From August 2009 through 2016, Freud sold an impressive number of reciprocating saw blades, numbering in the millions each year.[166] Freud has spent hundreds of thousands of dollars each year since 2009 advertising its cutting tools.[167] Although Freud does not break out advertising of reciprocating saw blades from its other cutting tools, the total advertising expenditures are nevertheless substantial. Some of Freud's advertisements emphasize the color red for reciprocating blades or otherwise prominently identify the color red as a trademark:

---

[166] Brewer Trial Decl. ¶ 14, 132 TTABVUE 6.

[167] Kohl Trial Decl., ¶ 13, 131 TTABVUE 8.

Cancellation Nos. 92059634 and 92059637



168

Freud claims that its use of the color red on reciprocating blades has been substantially exclusive for over eight years.[169] There are several problems with Freud's claim of exclusivity, however. First, in making this statement, Freud discounts red blades made by no fewer than twelve other manufacturers because the companies are "minor players in the industry" and unknown to Freud.[170] Although we do not have information regarding the relative sales of these red reciprocating blades, there can be no doubt that consumers have been exposed to them in varying degrees, particularly online. Second, Freud's claim ignores the impact of certain types

---

[168] Kohl Trial Decl., Ex. 22, 110 TTABVUE 12.

[169] Freud's Br., p. 44, 163 TTABVUE 46.

[170] Freud's Br., p. 45, 163 TTABVUE 47.

Cancellation Nos. 92059634 and 92059637

of red saw blades on consumer perception. As discussed above, *all* red saw blades are relevant to shaping consumer perception. *See Gen. Mills,* 124 USPQ2d at 1024.

Last, Freud ignores the state of the marketplace when Freud first began using red on reciprocating saw blades in 2009. Milwaukee submitted extensive evidence that it had been selling red reciprocating saw blades for more than 50 years before Freud's first use. Milwaukee also submitted numerous catalogs showing use of red reciprocating saw blades by others including Bosch, Makita, Irwin, and Craftsman, long before Freud's first use. These uses by others of the color red establish that consumers were accustomed to seeing red reciprocating blades from a variety of manufacturers long before Freud entered the market. The earlier use of red on reciprocating blades, coupled with continued use of the color red by others, even smaller manufacturers, undercuts Freud's evidence that its mark has acquired distinctiveness.

Milwaukee's evidence showing use of the color red on saw blades by it and third parties is probative to establish that Freud's use of the color red on reciprocating saw blades has not been substantially exclusive either at the time of registration or thereafter. *See Levi Strauss & Co. v. Genesco, Inc.,* 742 F.2d 1401, 222 USPQ 939, 940-41 (Fed. Cir. 1984) ("When the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an application for registration under Section 2(f) cannot be successful, for distinctiveness on which purchasers may rely is lacking under such circumstances."). Contrary to Freud's arguments, we find *Levi Strauss* to be relevant authority. Freud argues that

Cancellation Nos. 92059634 and 92059637

the case is inapposite because its witnesses have denied any third-party use of the claimed mark, whereas, in *Levi Strauss*, Levi's corporate officers, licensees and internal documents admitted to third-party use. We do not find this difference sufficient to distinguish the case. The point of *Levi Strauss* was the persuasiveness of the evidence of third-party use, not the fact that Levi Strauss did not contest third-party use. Here, the evidence overwhelmingly establishes that third parties used the mark both "before and after" Freud's claimed first use. We therefore find that Freud has not proved acquired distinctiveness. *Id.* at 940; *Quaker State Oil Refining Corp. v. Quaker Oil Corp.*, 453 F.2d 1296, 172 USPQ 361, 363 (CCPA 1972) (evidence insufficient to establish distinctiveness due to significant and continuous concurrent use of term by competitor such that applicant's use was not substantially exclusive).

Based on our review of the evidence in its entirety, and in the absence of more direct evidence of consumer perceptions, we find Freud has failed to meet its burden of proving that consumers seeking reciprocating saw blades would understand the primary significance of the color red alone as identifying Freud's reciprocating saw blades and, therefore, it has not acquired distinctiveness, either at the time of registration or now.

## VII. Fraud

Milwaukee alleges that Freud committed fraud in the prosecution of the trademark application underlying the '769 registration in four ways: Freud's declaration of exclusivity was fraudulent because Freud knew of use of the color red by others; Freud's response to the request for information was fraudulently deficient; Freud's dates of use were fraudulent because Freud did not specify the dates of use

Cancellation Nos. 92059634 and 92059637

for each individual item; and Freud's claim of acquired distinctiveness was fraudulent because Freud's evidence supporting the claim did not apply to all of the goods.

Fraud in procuring a trademark registration occurs when an applicant, with the intent to deceive the USPTO, knowingly makes false material representations of fact in connection with its application. *In re Bose Corp.*, 580 F.3d 1240, 91 USPQ2d 1938, 1941 (Fed. Cir. 2009). The standard for finding intent to deceive is stricter than the standard for negligence or gross negligence, and evidence of deceptive intent must be clear and convincing. *Id.*

Regarding Freud's declaration filed with the application, Milwaukee argues that Freud's knowledge of SystiMatic's use of the color red on saw blades makes fraudulent Freud's declaration that "no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto. . . ." 15 U.S.C. § 1051. The Board has held that "the allegations of ownership and exclusive use contained in the declaration or verification accompanying an application are made upon 'belief' and/or 'information and belief' and, as such, are couched in such a manner as to preclude a definitive statement by the affiant that could be ordinarily used to support a charge of fraud." *Kemin Indus., Inc. v. Watkins Prods., Inc.*, 192 USPQ 327, 329 (TTAB 1976); *see also Am. Sec. Bank v. Am. Sec. & Trust Co.*, 571 F.2d 564, 197 USPQ 65, 67 (CCPA 1978) ("Appellant misreads the cited statute and rules. They require the statement of *beliefs* about exclusive rights, not their actual possession. Appellant has produced no evidence impugning appellee's beliefs."). Milwaukee argues that Freud's 1998 agreement with SystiMatic to

Cancellation Nos. 92059634 and 92059637

discontinue advertisements referencing Freud's red saw blades is evidence that Freud knew it did not have superior rights in the mark.[171] We disagree. As with Freud's enforcement efforts against third parties, discussed above, Freud maintained its assertion of rights in the color red since its first use in 1988, and may have acquiesced to SystiMatic's request merely to avoid litigation. *See In re Wella Corp.*, 196 USPQ at 7 n.2. Here, we do not have evidence that, as of the date the declaration was signed, Freud knew that SystiMatic's right to use the color red as a trademark was superior or clearly established, e.g., by court decree or prior agreement of the parties. Freud thus may have had a reasonable basis for believing that no one else had the right to use the mark in commerce, and its averment of that reasonable belief in its application declaration or oath was not fraudulent. *Intellimedia Sports Inc. v. Intellimedia Corp.*, 43 USPQ2d 1203, 1207 (TTAB 1997).

Regarding Freud's response to the Examining Attorney's information request about competitors' use of the color red, we have no doubt that Freud's cursory response to the request was woefully lacking. No explanation regarding the use of color in the industry was provided. Instead, Freud simply provided a few third-party advertisements showing use of color on tools and cutting blades. That said, Freud's response did include a copy of SystiMatic's advertisement showing its red circular saw blade. Although Freud's response was deficient because it appears to have only superficially addressed the Examining Attorney's request for information, we think that, on this record, there is not enough to persuade us that Freud's failure to

---

[171] Brewer SJ Decl., Ex. 7, 149 TTABVUE 36.

Cancellation Nos. 92059634 and 92059637

thoroughly document the use of color by competitors rose to the level of fraud. Freud's response stated that it provided "[c]opies of competitors [sic] products which have color, to the extent [it] has such copies."[172] A trademark applicant has no duty to investigate third-party uses. *Maids to Order of Ohio Inc. v. Maid-to-Order Inc.*, 78 USPQ2d 1899, 1909 (TTAB 2006) (citations omitted). As with Freud's declaration above, Freud's failure to explain to the USPTO the uses by other entities is not fraudulent unless Freud knew the other entities using substantially the same mark for substantially identical goods had superior rights (assuming red could serve as a source identifier for saw blades) to Freud. *See Intellimedia Sports*, 43 USPQ2d at 1206. We do not find that Milwaukee has proven by clear and convincing evidence that Freud possessed such knowledge.

Regarding Freud's dates of use, Milwaukee argues that Freud's failure to indicate the dates of use for each item identified in the application constitutes fraud.[173] Milwaukee does not allege that the registered mark was not in use on all of the goods at the time of filing; and there is no evidence that the registered mark was not in use prior to the filing of the underlying application. The Board has held that if a mark was in use at the time an application is filed, an incorrect date of first use is not fraud. *See W. Worldwide Enters. Grp. Inc. v. Qinqdao Brewery*, 17 USPQ2d 1137, 1141 (TTAB 1990) ("The Board repeatedly has held that the fact that a party has set forth an erroneous date of first use does not constitute fraud unless, inter alia, there was

---

[172] Ruggiero Decl., p. 2, Freud's response to Office action dated February 27, 1998.

[173] Milwaukee's Br., p. 47, 158 TTABVUE 48.

Cancellation Nos. 92059634 and 92059637

no valid use of the mark until after the filing of the application."). Here, Freud's failure to indicate the dates of use for each item identified in the application is, at worst, akin to stating an erroneous date of first use, and does not constitute fraud.

Regarding Freud's claim of acquired distinctiveness, Milwaukee argues that the claim was fraudulent because Freud's statements and evidence related primarily to shaper cutters and not to saw blades.[174] That is, since Freud only began using the color red on saw blades shortly before the filing date of the application, Freud's advertising costs and sales revenues going back four years did not apply to saw blades and were "indisputably false" and "intentionally misleading."[175] For its part, Freud argues that the advertising and sales number are accurate because Freud grouped all of its cutting tool products together. Freud also argues that, in any event, there is no evidence that it intended to defraud or deceive the USPTO.[176]

Even if we accept Milwaukee's argument that Freud improperly referred to its goods collectively as "the products" when it relied on all of the sales and advertising figures, Milwaukee has no support for the alleged requisite intent to deceive the USPTO. "Intent can be inferred from indirect and circumstantial evidence. But such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement." *Bose*, 91 USPQ2d at 1941. Here, we do not find Freud's failure to break out the showing of acquired

---

[174] *Id.* at 49, 158 TTABVUE 50.

[175] *Id.*

[176] Freud's Br., p. 54, 163 TTABVUE 56.

Cancellation Nos. 92059634 and 92059637

distinctiveness by individual product to be clear and convincing evidence that it intended to defraud the USPTO. "[A]bsent the requisite intent to mislead the PTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation." *Id.* at 1940. *See M.C.I. Foods Inc. v. Bunte*, 96 USPQ2d 1544, 1549 (TTAB 2010) ("[w]e will not draw an inference that [a party] acted with the intent to deceive the Trademark Office without some factual basis for drawing such an inference.").

For the foregoing reasons, we find that Milwaukee has not proved that the '769 registration was obtained through fraud on the USPTO.

## VIII. Freud's motion to amend its registration.

Freud moved to amend the '769 registration to narrow the scope of the saw blades by adding the language "excluding reciprocating saw blades and jigsaw blades."[177] The proposed amended identification of goods would thus read: Cutting tools for power woodworking machines, namely shaper cutters, saw blades excluding reciprocating saw blades and jigsaw blades, router bits and forestner bits. Consideration of the motion was deferred until final hearing.[178]

In light of the finding that the color red is generic as to saw blades, and because the amendment does not exclude other types of saw blades that are commonly colored red by competitors, namely, non-wood-cutting circular saw blades that can be used

---

[177] 21 TTABVUE.

[178] 25 TTABVUE.

Cancellation Nos. 92059634 and 92059637

on power woodworking machines, sabre saw blades, and hole saws, among others, the amendment is denied.

**_Decision_**: The petitions to cancel are granted on the bases explained above. The identification of goods in Registration No. 2464769 is amended to read: "cutting tools for power woodworking machines, namely, shaper cutters, [saw blades,] router bits and forestner bits" in International Class 7. Registration No. 4028314 is cancelled.